[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

Nos. 94-4586 and 94-4368

---

D. C. Docket No. 89-10103 CIV-JLK

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/29/98
THOMAS K. KAHN
CLERK

STUART I. LEVIN & ASSOCIATES, P.A.,

Plaintiff-Appellant,

versus

RONALD ROGERS,

Defendant-Appellee.

---

No. 96-4345

---

D.C. Docket No. 89-10103-civ-JLK

STUART I. LEVIN, as principal
of Stuart Levin & Associates,

Movant-Appellant,

versus

RONALD ROGERS,

Defendant-Appellee,

---

Appeals from the United States District Court
for the Southern District of Florida

**(September 29, 1998)**

Before TJOFLAT and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Attorney Stuart Levin appeals from the district court's imposition upon him, under Rule 37 of the Federal Rules of Civil Procedure (1998) ("Rule 37"), of monetary sanctions for violations of discovery orders during litigation in which Levin and an associate in his law firm, Stuart Levin & Associates, represented the plaintiff. Levin argues that the district court erred by imposing sanctions upon him personally, because he was not the "advising attorney" responsible for the discovery abuses. In addition, Levin asserts that the court's judgment imposing sanctions against him should be vacated because he did not receive adequate notice of the sanctions hearing and was therefore denied an opportunity to be heard, in violation of the Due Process Clause of the Fifth Amendment. Finally, Levin claims that the attorney's fees and expenses awarded by the court as sanctions against him are excessive and not supported by the record. Because we find that all of Levin's arguments lack merit, we affirm.

I.

This case arose from the production of two similar musical recordings, "Yellow Bird" and "Sunny Days." Newton Simmons and appellee Ronald Rogers both were involved in the production of the former, while the latter was produced by Rogers without Simmons'

involvement. Simmons and Rogers present substantially different versions, however, of the circumstances under which the two recordings were recorded, manufactured, and marketed.

According to his Verified Amended Complaint,[1] Simmons, also known under the stage name "Bolivar," is a performer and composer of traditional Caribbean music. In January 1989, Simmons decided to record a music album, to be named "Yellow Bird," consisting of a number of Carribean songs. Simmons enlisted musicians for hire, including Rogers, to assist him in the production of the album. In April 1989, Simmons arranged for the manufacture of the completed album at his own expense. Subsequently, Simmons and Rogers entered into a distribution agreement whereby Rogers agreed to distribute the Yellow Bird album in Monroe County, Florida. For that purpose, between April and July 1989, Simmons provided Rogers with more than 3,000 copies of the Yellow Bird album on cassette tape.

In his complaint, Simmons alleges that Rogers stopped distributing the Yellow Bird cassettes in August 1989, and thereafter refused to return the cassettes. Instead, beginning in September 1989, Rogers began distributing copies of a cassette entitled "Sunny Days," the musical arrangement and packaging for which is substantially similar to the Yellow Bird cassette. Simmons claims that Rogers produced the Sunny Days cassette – essentially a counterfeit of Yellow Bird – and caused retail sellers of the Yellow Bird cassette to cease selling Yellow Bird and replace it with Sunny Days.

In November 1989, Simmons obtained a copyright on the Yellow Bird album. Simmons served Rogers notice that his Sunny Days album infringed upon the Yellow Bird copyright.

---

[1] We recite the facts from Simmons' Verified Amended Complaint merely to provide background to our discussion of the issues in this case. We do not comment on the validity or veracity of the complaint's allegations.

2

Simmons also demanded that Rogers return the Yellow Bird cassettes that he did not sell. According to Simmons, Rogers not only refused to return the roughly 3,000 Yellow Bird cassettes in his possession, he continued to market and sell Sunny Days despite notice that he was violating Simmons' Yellow Bird copyright.

As a result of Rogers' alleged intransigence, Simmons, represented by the law firm of Holland & Knight, brought suit against Rogers in July, 1990. Simmons alleged, <u>inter alia</u>, that Rogers violated his copyright, infringed on his trademark, converted his personal property, breached the distribution contract, and breached his fiduciary obligations to Simmons.

In September 1990, Rogers filed a counterclaim, bringing virtually identical charges against Simmons: copyright infringement, common law trademark infringement, breach of contract, and breach of fiduciary obligation, among others.[2] Rogers challenged Simmons' version of the events surrounding the composition and production of the Yellow Bird cassette. Rogers claimed that he commissioned Simmons to record an album of "ten favorite Island songs," and that Yellow Bird was the result of this collaborative project between him and Simmons. He asserted in his counterclaim that they composed several of the songs together, collaborated on the song list, and shared the cost of producing the album. In addition, Rogers alleged that his wife designed the packaging for the cassette, and that he chose the musicians and instruments to be used in recording the songs. Rogers claimed that he and Simmons orally agreed jointly to copyright Yellow Bird – and that the copyright designation on the package for

---

[2] Rogers filed his counterclaim <u>pro se</u>. Although the counterclaim alleges copyright infringement in its general averments, it does not contain a separate count asserting copyright infringement. In his fraud count, however, Rogers claims that Simmons caused him to lose his "copyright rights."

the cassette even includes the name and address of Rogers' business – but that Simmons then perfidiously filed a copyright registration from which he omitted Rogers.  According to Rogers, Simmons compounded his offensive behavior by distributing Yellow Bird on his own in Monroe County – in which Rogers had the exclusive right to distribute the album under the contract – and by telling retail sellers that Rogers' non-infringing Sunny Days cassette violated his copyright on Yellow Bird, causing the retail sellers to remove Sunny Days from their stores.

The parties' sharply contrasting stances regarding the factual predicate of the litigation set the stage for an extended and acrimonious discovery period.  The record is replete with motions to compel the production of documents, to compel answers to interrogatories, and to compel depositions.  Rogers noted in one May 1991 pleading requesting sanctions against Simmons that he had already filed four motions to compel discovery, all of which had been granted by the court.  In her Omnibus Report and Recommendation dated August 12, 1991, the magistrate judge assigned to the case again ordered the production of certain documents and recommended that the district court impose sanctions against Simmons under Rule 37(b)(2) for failing to comply with the court's discovery orders.  On August 29, 1991, the district court approved the magistrate's recommendations.  Shortly thereafter, Holland & Knight withdrew as counsel, citing Simmons' failure to "fulfill his obligations according to his agreement with Holland & Knight" and his insistence on "pursuing an objective that Holland & Knight consider[ed] imprudent."

In January 1992, after numerous extensions of time for Simmons to obtain new counsel – during which time the magistrate judge entered additional orders compelling Simmons to produce documents and answer interrogatories – Stuart I. Levin entered an appearance on behalf

of Simmons. On March 23, 1992, Simmons and his counsel again were ordered to produce the documents referred to in the magistrate judge's August 12, 1991, report and recommendation to the district court. By May of 1992, the magistrate judge recommended that the district court dismiss Simmons' complaint. She wrote in her July 14, 1992, Omnibus Report and Recommendation that "Simmons' flagrant disregard for this Court and the discovery process and his wilful failure to comply with numerous court orders justifies the severe sanction of dismissal," and that "Simmons' failures in the area of discovery are legend." Regarding the performance of substitute counsel, the judge wrote:

> When Simmons' attorney withdrew as counsel of record in October 1991, this Court allowed Simmons numerous extensions of time to obtain substitute counsel. Substitute counsel was finally obtained some three months later in January 1992. At that time substitute counsel was personally notified by this Court of the numerous discovery requests which remained unanswered as well as the numerous motions pending to which no responses had been filed. Agreeing to overlook the untimeliness of any discovery responses made and motion responses filed, the undersigned permitted substitute counsel an extended period of time in which to respond to outstanding motions and produce sought after discovery. Simmons simply ignored this order, forcing this Court to enter the same order on at least two separate occasions. Simmons finally complied with these orders but then only partially. To date there remains pending numerous discovery requests, some as much as ten (10) months old, as well as many unresponded to discovery and dispositive motions. Further, countless orders directing discovery compliance simply go ignored. Simmons' discovery abuses and flagrant disregard for this Court's orders simply cannot be tolerated any longer.

The district court adopted the magistrate's report and dismissed Simmons' complaint on August 5, 1992, sending a copy of its order to Stuart Levin.

The suit, and Simmons' intransigence, continued because of the unresolved issue of Rogers' counterclaim. On December 15, 1992, the magistrate judge recommended that a default judgment be entered against Simmons on the counterclaim and recommended sanctions against

5

Simmons. The district court adopted the recommendations in its order dated February 12, 1993, granting both default judgment and Rogers' motion for sanctions.

An evidentiary hearing on Rogers' consolidated motions for sanctions was held on August 6, 1993; Levin's associate Robert Horkitz appeared on Simmons' behalf but did not speak at the hearing. On November 30, 1993, the district court entered an order imposing sanctions for discovery abuse under Rule 37(b)(2) against both Holland & Knight and Levin. The district court based its sanctions decision upon the October 27, 1993, "Report and Recommendations Regarding the Propriety of Sanctions against Holland & Knight" prepared by the magistrate judge. In that report and recommendation, the magistrate found that the obstructive tactics of Newton Simmons and his counsel began during Holland & Knight's tenure, and that Holland & Knight had not rectified its abuses before it withdrew from the case. He also held Levin liable, however, because rather than rectifying Holland & Knight's transgressions, Levin participated in and perpetuated the abuses of the district court's discovery orders. The magistrate judge wrote:

> That is not to say that Stuart Levin does not share in the blame. After Holland [&] Knight's withdrawal, Simmons and successor counsel Levin were given multiple extensions of time to respond to discovery and to motions that required responses. They were even given an opportunity to reevaluate Simmons' previous discovery objections. Simmons and successor counsel Levin failed to take advantage of these opportunities.

Holland & Knight subsequently settled with Rogers on the sanctions awarded against it by the district court, and was released as a party to the sanctions proceedings.

The district court also entered its Order of Final Judgment on Counterclaim on November 30, 1993, noting that Simmons had failed to respond to Rogers' motion for entry of judgment on the defaulted counterclaim. At the subsequent trial for damages, the only attorney to appear on

6

behalf of Simmons was attorney David Rowe, who stated that he had joined Levin's firm as counsel. Rowe told the district court that Levin had called him and asked him to appear because his associate Horkitz had been hospitalized for leukemia and Levin himself was involved in a deposition. Rogers' counsel noted that Levin was counsel of record for Simmons, that he had sent a number of letters providing notice of the hearing to Levin, and that he was prepared to hold the hearing. Upon hearing Rowe's claim that he knew nothing of the case, the court advised Rowe not to get involved in the case at such a late date and with no knowledge of the matters at hand. The court then proceeded to hear the evidence presented by Rogers.

On March 4, 1994, the district court entered final judgment awarding Rogers $4,941,444 in actual and exemplary damages, together with $298,521.90 in attorney's fees against Simmons. Based on an affidavit prepared by Rogers' counsel, the court also imposed $29,953 in Rule 37(b)(2) sanctions against Levin. Levin's subsequent Motion to Vacate Judgment, filed under Rule 60(b) of the Federal Rules of Civil Procedure (1998), was denied by the district court. Levin timely appealed both the district court's final judgment and its denial of his motion to vacate. These consolidated appeals are presently before us.


II.

Levin raises three issues on appeal. First, he argues that the specific language of Rule 37(b)(2) provides for the imposition of discovery sanctions upon only the "advising attorney," and that he was merely the employer of the "advising attorney" responsible for the sanctionable conduct. Second, Levin argues that the district court should have granted his Federal Rule of Civil Procedure 60(b) motion to vacate judgment because he did not receive adequate notice and

an opportunity to be heard prior to the imposition of sanctions against him. Finally, Levin claims that the attorney's fees claimed by Rogers' lawyers that served as the basis for the district court's sanctions award are excessive and not supported by the record. We address these claims in order and find that they have no merit. We therefore affirm the district court's judgment.

A.

Our review of the district court's imposition of Rule 37(b)(2) sanctions against Levin is "limited to a search for abuse of discretion and a determination that the findings of the trial court are 'fully supported by the record.'" Carlucci v. Piper Aircraft Corp., 775 F.2d 1440, 1447 (11th Cir. 1985) (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S. Ct. 2778, 2780, 49 L. Ed. 2d 747 (1976) (per curiam)).

Rule 37(b)(2) provides a range of sanctions that a district court may impose upon parties and their attorneys for failure to comply with the court's discovery orders. It provides that the court, in its discretion, may impose, among others, the following sanctions: (1) the court may order that disputed facts related to the violated order be considered established in accordance with the claim of the party obtaining the sanctions order; (2) the court may refuse to permit the violating party to raise certain defenses, or it may prohibit that party from opposing certain claims or defenses of the party obtaining the sanctions order; (3) the court may strike any pleadings or any parts of the pleadings of the violating party, stay the proceedings, or even dismiss the action or enter a judgment of default against the violating party; and (4) the court may consider the violation a contempt of court. In addition to these sanctions, Rule 37(b)(2) provides:

8

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or <u>the attorney advising that party</u> or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2) (emphasis added). Levin claims that the district court's imposition of

sanctions upon him – in the form of attorney's fees under this last provision of Rule 37(b)(2) –

was an abuse of discretion because his associate, Robert Horkitz, was the attorney "advising"

Simmons during the discovery period, not Levin himself.[3]

---

[3] Levin also claims that he may not be held liable under Rule 37(b)(2) simply because he was Horkitz's employer. He bases this argument upon the Supreme Court's decision in <u>Pavelic & LeFlore v. Marvel Entertainment Group</u>, 493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989). In <u>Pavelic</u>, the Court held that a district court could not impose sanctions under Fed. R. Civ. P. 11 against a law firm, because the clear text of Rule 11 required that sanctions be imposed against the "person who signed" the frivolous document presented to the court. <u>See</u> <u>id.</u> at 123-27, 110 S. Ct. at 458-60. The Court held that it would be "as strange to think that the phrase 'person who signed' . . . refers to the partnership represented by the signing attorney, as it would be to think that the earlier phrase [in Rule 11] 'the signer has read the pleading' refers to a reading not necessarily by the individual signer but by someone in the partnership." <u>Id.</u> at 124, 110 S. Ct. at 458-59. Refuting the notion that principles of partnership and agency law made imposition of sanctions upon law firms acceptable under Rule 11, the Court held that Rule 11 departs significantly from the common law because it imposes a non-delegable duty upon an attorney signing a document to "satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment." <u>Id.</u> at 125, 110 S. Ct. at 459. Levin argues that "attorney advising" in Rule 37 is analogous to "person who signed" in Rule 11, and that, therefore, he cannot be liable under principles of agency for the discovery abuses of his associate Horkitz.

Levin presents a very interesting argument, made even more interesting by two additional facts: (1) although the magistrate wrote that Rule 37 sanctions were appropriate against "Stuart Levin," the district court, in its Final Judgment dated March 4, 1994, actually held that "Stuart Levin & Associates" was responsible for $29,953 in attorneys fees; and (2) on at least two occasions, this circuit has affirmed – without discussing the <u>Pavelic</u> argument raised by Levin – Rule 37 sanctions imposed against law firms. <u>See</u> <u>BankAtlantic v. Blythe Eastman Paine Webber, Inc.</u>, 12 F.3d 1045 (11th Cir. 1994) (upholding award of sanctions under Rule 37 against law firm and client for withholding evidence in violation of discovery order); <u>Pesaplastic, C.A. v. Cincinnati Milacron Co.</u>, 799 F.2d 1510 (11th Cir. 1986) (upholding sanctions award against law firm and corporate client under Rule 37). Because we hold that Levin was an "advising

9

Levin's argument is unpersuasive. The record indicates that Levin entered an appearance on behalf of Simmons in January of 1992. From that time on, Levin was at all times counsel of record for Simmons. Levin signed many of Simmons' pleadings, particularly early in his representation. Levin asserts that he turned over responsibility for representing Simmons to his associate, Horkitz, and that Horkitz was responsible for the discovery abuse for which he is now being sanctioned. This argument is unavailing. As counsel of record, Levin owed a duty to his client fully to represent his interests, and he owed a duty to the court to comply with the court's orders. Although Levin may have delegated some of these duties to his associate, such a delegation – while it may provide a ground for sanctioning Horkitz – did not relieve Levin of his own duties. We find that the record fully supports the district court's determination that Simmons was an "advising" attorney and therefore hold that the district court did not abuse its discretion when it held Levin liable for sanctions under Rule 37(b)(2).

B.

---

attorney" – and thus directly liable under the terms of Rule 37 – and because Levin, by his own admission (he claims repeatedly that the court held him "personally liable"), is the only person responsible for paying the sanction imposed against Stuart Levin & Associates, we need not address this argument by Levin.

Of course, we do note that during the pendency of Levin's case, Rule 11 was amended to expressly provide for the sanctioning of law firms, permitting courts to hold firms "jointly responsible for violations committed by its partners, associates, and employees." Fed. R. Civ. P. 11 (1998); see also Prim v. Peatco Ltd, 1995 WL 447648, at *1 (S.D.N.Y. July 27, 1995) ("The amendments to Rule 11, however, which became effective on December 1, 1993, changed the Pavelic rule and provides [sic] that '[a]bsent exceptional circumstances, a law firm shall be held jointly responsible for [rule] violations . . . .'" (citation omitted)). We do not reach the determination of whether the old rule or the amended rule should apply to Levin's actions, see Paese v. New York Seven-up Bottling Co., 158 F.R.D. 34, 36-37 (S.D.N.Y. 1994), because of our holding that Levin is directly liable under Rule 37 as an advising attorney.

10

Following the district court's entry of final judgment awarding Rogers damages and attorney's fees, including the attorney's fees imposed upon Levin as sanctions for the Rule 37 violations, Levin filed a motion to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b). The district court denied Levin's motion. We review this denial for abuse of discretion. See Commodity Futures Trading Comm'n v. American Commodity Group Corp., 753 F.2d 862, 866 (11th Cir. 1984).

Levin claims that the district court erred in denying his motion to vacate the judgment because he had not received notice and an opportunity to be heard before the sanctions judgment was entered. Levin premises his due process argument, like his argument that he was not the "advising" attorney, upon his assertion that he turned over responsibility for the case to his associate Horkitz. Levin points out that he may not have seen correspondence indicating that he could be liable for damages in this case because it might have been routed to his associate rather than to him.

Levin's claim of no notice borders on the frivolous. As mentioned above, at the trial on damages, David Rowe appeared on behalf of Levin's firm to inform the court that Horkitz was in the hospital undergoing treatment for leukemia. He told the court that he had been called by Levin the night before and asked to appear because Levin was otherwise engaged. Levin not only was aware of the proceedings going on before the district court, he was also – not surprisingly – aware that his associate, to whom he had supposedly delegated responsibility over Simmons' case, was hospitalized with a serious illness. Rather than bringing this fact to the court's attention, timely seeking any necessary continuance, and handling the case himself,

11

Levin chose not to appear before the court, a move consistent with his later claim of complete ignorance.

Levin was responsible for the management of his client's interests and for complying with orders of the court. The fact that numerous motions for sanctions were filed by Rogers, and that Levin was made aware of the outstanding orders of the court compelling production of documents and answers to interrogatories when he first appeared on Simmons' behalf, leads us to the inescapable conclusion that Levin received sufficient notice of the imposition of Rule 37(b)(2) sanctions imposed by the court to satisfy the requirements of due process. See Devaney v. Continental Am. Ins. Co., 989 F.2d 1154, 1160 (11th Cir. 1993) ("[A] motion for sanctions under Rule 37, even one which names only a party, places both that party and its attorney on notice that the court may assess sanctions against either or both . . . .").

C.

Levin's final claim – that the damages awarded by the district court are excessive and unsupported by the record – is as meritless as his first two claims. In its order affirming the magistrate's recommendation that Levin be sanctioned, the district court requested that Rogers' counsel provide an affidavit detailing counsel's fees and expenses related to Levin's discovery abuse; in response, Rogers' counsel provided a detailed accounting of his expenses totaling $29,953. Levin did not object to, nor seek to controvert in any way, the expenses claimed by Rogers' counsel, and the district court found the amount to be reasonable. Levin's post hoc argument that Rogers' counsel spent too much time preparing the motions related to the Rule 37(b)(2) sanctions, and that counsel's practice of billing in fifteen-minute intervals is unfair to

12

him, comes too late. We find that the district court's decision to accept the affidavit of fees and expenses from Rogers' counsel was entirely reasonable, and certainly not an abuse of its discretion.

III.

For the foregoing reasons, we find that the district court did not abuse its discretion in imposing Rule 37(b)(2) sanctions in the amount of $29,953 against Stuart Levin, or in denying his motion to vacate the judgment. We therefore AFFIRM the rulings of the district court.

AFFIRMED.