593 N.W.2d 589 (1999)
233 Mich. App. 694
In re ATTORNEY FEES and COSTS.
Michael Septer and Karen Groff, Plaintiffs, and
Shawn Michael Gotch and Damon & Damon Appellants/Cross-Appellees,
v.
Donald Tjarksen, Jane Tjarksen, Jerry J. Parmentier and Susan Parmentier, Defendants-Appellees/Cross-Appellants.
Docket No. 200874.
Court of Appeals of Michigan.
Submitted September 8, 1998, at Grand Rapids.
Decided February 2, 1999, at 9:35 a.m.
Released for Publication April 21, 1999.
*590 Charles F. Justian, Grand Rapids, for Shawn Michael Gotch and Damon & Damon.
Warner Norcross & Judd LLP (by Paul T. Sorensen, Thomas H. Thornhill, and Daniel P. Ettinger), Grand Rapids, for Donald Tjarksen and others.
Before: SMOLENSKI, P.J., and McDONALD and SAAD, JJ.
McDONALD, J.
Appellants, the individual attorney representing plaintiffs in the underlying action and his law firm, appeal by leave granted the trial court's order awarding defendants attorney fees and costs pursuant to M.C.L. § 600.2591; MSA 27A.2591. The trial court ruled appellants and plaintiffs were jointly and severally liable to defendants for the attorney fees and costs.[1] We affirm.
This case arises out of an unconsummated real estate transaction. On January 23, 1995, plaintiffs Michael Septer and Karen Groff executed a buy/sell agreement with *591 defendants Donald Tjarksen and Jane Tjarksen to purchase the Tjarksens' home under a sixty-month land contract for $239,000. Paragraph four of the agreement provided that "Buyer will provide Seller evidence of satisfactory credit worthiness, down payment and income verification within 10 days of acceptance."
Plaintiffs provided a credit report from Trans Union Credit to the Tjarksens. Among other things, the credit report indicated that plaintiff Septer had filed for bankruptcy, had a civil judgment against him in the amount of $25,300, and had federal and state tax liens against him. Moreover, defendants' attorney, Paul Jackson, performed an independent investigation of plaintiffs' creditworthiness and discovered that plaintiff Septer, a physician, had liabilities of over $2 million that had not been discharged in the bankruptcy proceeding, had been convicted of mail fraud, had professional disciplinary actions against him, and had been restricted from prescribing certain controlled substances pursuant to an agreement with the Drug Enforcement Agency (DEA).
Jackson notified plaintiffs by letter on February 8, 1995, that defendants were terminating the buy/sell agreement because the credit report did not establish creditworthiness as required by the contract. The letter also indicated that plaintiffs would be given the option to purchase the property for cash instead of terminating the agreement.
At some point after the February 8 letter, the Tjarksens agreed to give plaintiffs until February 14, 1995, to obtain a mortgage and deliver a mortgage commitment letter. However, plaintiffs did not obtain financing by the February 14 deadline, and Jackson sent another letter to plaintiffs declaring the buy/sell agreement void.
The Tjarksens later executed a land contract with the Parmentier defendants on March 17, 1995. On February 8, 1995, the Parmentiers had offered to purchase the property for $245,000 under a three-year land contract. However, according to defendants, the Tjarksens conditioned acceptance of the Parmentiers' offer on plaintiffs' inability to meet the February 14, 1995, deadline to obtain a mortgage commitment.
In the meantime, plaintiffs had attended the previously scheduled closing on February 10, 1995. However, the Tjarksens did not attend the closing. Plaintiffs then attempted to arrange alternate financing, arguing they had until March 10, 1995, to obtain such financing under the buy/sell agreement.[2] Eventually, plaintiffs filed suit against the Tjarksens seeking specific performance of the buy/sell agreement and damages of $200 a day pursuant to the agreement. Plaintiffs later amended their complaint to add a claim against the Parmentiers for tortious interference with a contract.
The parties conducted extensive discovery, including the taking of fifteen depositions. Eventually defendants filed a motion for summary disposition, which the trial court granted on November 30, 1995. Plaintiffs did not appeal the trial court's grant of summary disposition.
Defendants filed their motion to recover costs and attorney fees on February 7, 1996. Although defendants sought costs and attorney fees under M.C.L. § 600.2591; MSA 27A.2591 and MCR 2.114(D) and (E), the trial court granted the motion pursuant to the statute alone. Moreover, defendants requested attorney fees of $32,619, but the trial court awarded only $15,000 in attorney fees. The trial court's order provided that plaintiffs and their counsel were jointly and severally liable to defendants for the attorney fees and costs, and held that plaintiffs' counsel was entitled to reimbursement from plaintiffs for the amount paid to defendants in excess of fifty percent of the fees and costs awarded. The trial court later entered a supplemental order clarifying the earlier order, identifying plaintiffs' counsel as "Damon & Damon and Shawn M. Gotch."
This Court eventually granted leave to appeal to appellants in this case, attorney Gotch and his law firm, Damon & Damon.
*592 Appellants first argue defendants did not timely file their motion for sanctions pursuant to M.C.L. § 600.2591; MSA 27A.2591. The trial court has the discretion to decide if a motion was timely filed and this Court reviews the trial court's decision for an abuse of discretion. Maryland Casualty Co. v. Allen, 221 Mich.App. 26, 31, 561 N.W.2d 103 (1997).
When costs are awarded pursuant to M.C.L. § 600.2591; MSA 27A.2591, the appropriate standard for determining whether the motion for costs is timely is whether the motion was filed within a reasonable time after the prevailing party was determined. Avery v. Demetropoulos, 209 Mich.App. 500, 503, 531 N.W.2d 720 (1995), citing Giannetti Bros. Constr. Co., Inc. v. Pontiac, 152 Mich.App. 648, 394 N.W.2d 59 (1986). The prevailing party was determined in this case when the trial court granted defendants' motion for summary disposition and dismissed plaintiffs' action on November 30, 1995. Defendants filed their motion for costs and fees on February 7, 1996, seventy days later.
In Giannetti this Court considered whether the defendant's attorney moved for costs under the mediation rules[3] within a reasonable period. There, a bench trial was held and the trial court found no cause of action for the plaintiff. The judgment entered in the defendant's favor awarded costs to the defendant, but the defendant did not move for approval of its bill of costs until fifty-five days after this Court affirmed the trial court's judgment. Id. at 650, 394 N.W.2d 59. After concluding that the thirty-day time limit in GCR 1963, 526.10(2), which was similar to MCR 2.625(F), did not apply, this Court held that a motion for costs under the mediation rules must be brought within a reasonable time. Giannetti supra at 657, 394 N.W.2d 59. This Court found that, under the circumstances of the case, considering "the complexity of the trial and the sums of money involved," it was not unreasonable for the defendant to move for costs fifty-five days after this Court's resolution of the appeal. Id.
Appellants argue this case is not comparable to Giannetti because this case was decided on a summary disposition motion and did not involve a complex trial. Therefore, appellants claim it was not reasonable for defendants to wait so long to file their motion for sanctions. However, under the circumstances of this case, we find the trial court did not abuse its discretion in allowing the motion to be brought at the time it was filed.[4]Maryland Casualty Co, supra at 31, 561 N.W.2d 103. We find no significant difference between the period this Court found reasonable in Giannetti and the period in this case. However, we urge the Legislature to bring more clarity to this area of the law by amending M.C.L. § 600.2591; MSA 27A.2591 to include a time limit for filing motions for sanctions under the statute and to give trial courts the discretion to grant extensions when warranted by the circumstances of a particular case.
Next, appellants argue the trial court erroneously concluded plaintiffs' claims were frivolous within the meaning of M.C.L. § 600.2591; MSA 27A.2591. This Court will not disturb a trial court's finding that a claim was frivolous unless the finding is clearly erroneous. Szymanski v. Brown, 221 Mich.App. 423, 436, 562 N.W.2d 212 (1997). A trial court's decision is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. Schadewald v. Brule, 225 Mich.App. 26, 41, 570 N.W.2d 788 (1997).
MCL 600.2591; MSA 27A.2591 provides, in relevant part:
[I]f a court finds that a civil action ... was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by *593 assessing the costs and fees against the nonprevailing party and their attorney. [MCL 600.2591(1); MSA 27A.2591(1).]
An action is frivolous if one of the following conditions is met:
(i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
(iii) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a); MSA 27A.2591(3)(a).]
To determine whether sanctions are appropriate under M.C.L. § 600.2591; MSA 27A.2591, it is necessary to evaluate plaintiffs' claim at the time the lawsuit was filed. Louya v. William, Beaumont Hosp., 190 Mich.App. 151, 162, 475 N.W.2d 434 (1991).
The trial court found there was no reasonable basis for appellants to believe that plaintiffs were creditworthy. We are not left with a definite and firm conviction that the trial court made a mistake in reaching that conclusion. The record reveals that at the time the lawsuit was filed, the following facts were in existence. The plaintiffs' credit report showed considerable debt and several write-offs, as well as a federal tax lien of $7,819, a civil judgment of $25,300, and a Chapter 7 bankruptcy filing. Moreover, as attorney Jackson's investigation revealed, a nondischargeability judgment was entered in the bankruptcy proceeding in May 1993, leaving plaintiff Septer with liabilities of over $2 million, plaintiff Septer had been convicted of mail fraud, had professional disciplinary actions against him, and had been restricted from prescribing certain controlled substances pursuant to an agreement with the DEA. Furthermore, plaintiffs had not been able to meet the February 14, 1995, deadline for obtaining a mortgage commitment or cash to pay the purchase price of the property. While attorney Gotch claims the two mortgage commitments plaintiffs presented on March 10, 1995, proved they were creditworthy, these commitments were of questionable value. First National Bank of Michigan committed to lend plaintiffs seventy percent of either the sale price or the appraisal, whichever amount was lower, at an interest rate of 13.95 percent. Plaintiffs would have been required to pay approximately $70,000 in cash to make up the difference between the purchase price and the loan amount. Allstate Mortgage and Finance Corporation committed to lend plaintiffs $174,000 at an interest rate of approximately fourteen percent, provided that plaintiffs brought to the closing $65,000 in cash and verification that they had been discharged in the bankruptcy proceeding, which would have been impossible to provide considering the nondischargeability judgment entered in the bankruptcy proceeding. Plaintiffs obviously were aware of these facts, because they provided the credit report to the Tjarksens, plaintiff Septer had participated in the proceedings against him, and plaintiffs obtained the mortgage commitments after the February 14 deadline. Because nothing in the record suggests the contrary, we assume attorney Gotch was also aware of these facts within his clients' knowledge.
Appellants argue that when the complaint was filed, attorney Gotch had information that defendants had previously approved plaintiffs' credit on February 7, 1995. However, in support of their position appellants cite a document that was contained within the realtor's file. This document was apparently obtained during discovery, which obviously occurred after the lawsuit was filed; therefore, it is not relevant to our inquiry. Moreover, appellants argue that because defendants failed to respond to plaintiffs' request for admissions within the requisite period, they were deemed admitted, and this information further supported plaintiffs' case. According to appellants, the request for admissions was filed at the same time as the complaint. It was impossible for appellants to rely on these admissions when the suit was filed because at that time they were not deemed admitted. These arguments are not persuasive.
In light of these circumstances, we find the trial court did not clearly err in concluding there was no reasonable basis for appellants to believe that plaintiffs were creditworthy. Sanctions were appropriate under M.C.L. § 600.2591(3)(a)(ii); MSA 27A.2591(3)(a)(ii).
The trial court also found that the suit was filed to "harass, injure, or embarrass" defendants, *594 relying on a letter dated March 10, 1995, from attorney Gotch threatening to pursue a claim for specific performance and seek damages under the contract if defendants did not complete the sale to plaintiffs. We do not believe this letter alone is enough to show the suit was filed for an improper purpose. However, we need not decide whether the trial court clearly erred in so finding because we have already determined that sanctions were properly awarded under M.C.L. § 600.2591(3)(a)(ii); MSA 27A.2591(3)(a)(ii).[5]
Appellants next argue the trial court's award of $15,000 in attorney fees was excessive. In their cross appeal, defendants claim the award was insufficient because the trial court should have awarded them their actual attorney fees. We disagree with both contentions. We review an award of attorney fees for an abuse of discretion. Wood v. DAIIE, 413 Mich. 573, 588, 321 N.W.2d 653 (1982); B & B Investment Group v. Gitler, 229 Mich.App. 1, 15, 581 N.W.2d 17 (1998).
Contrary to defendants' claim, the trial court was not required to award them their actual attorney fees. Instead, the trial court's duty was to award defendants "reasonable attorney fees." MCL 600.2591(2); MSA 27A.2591(2). The trial court recognized the applicable factors for determining a reasonable attorney fee as set forth in Crawley v. Schick, 48 Mich.App. 728, 737, 211 N.W.2d 217 (1973), and adopted by the Michigan Supreme Court in Wood, supra at 588, 321 N.W.2d 653. Although appellants suggest otherwise, the trial court was not required to detail its findings on each factor considered. Id.; B & B Investment Group, supra at 16, 581 N.W.2d 17.
The trial court found it was unreasonable for defendants' attorneys to "spend so much time and expertise" on this matter. Accordingly, the trial court stated it would not award defendants more than $125 an hour for the time spent on the case. The trial court also limited the fees to the amount incurred through the judgment. After applying the hourly rates to the amount of hours spent on the case, the trial court further reduced the amount of attorney fees by $6,691. The trial court awarded defendants less than half of the attorney fees they originally requested. We find no abuse of discretion.
Finally, appellants argue the trial court erred in issuing a supplemental order adding the law firm of Damon & Damon as an additional party responsible for the sanctions imposed. Appellants contend attorney Gotch should be held solely responsible for sanctions because he is the only attorney who signed the frivolous pleadings. Whether it is proper to assess costs and fees against the law firm as well as the individual lawyer representing a party is an issue of first impression.
MCL 600.2591(1); MSA 27A.2591(1) requires that a court award costs and fees to the prevailing party when it finds that a civil action is frivolous and that it do so "by assessing the costs and fees against the nonprevailing party and their attorney." Accordingly, the issue is whether the law firm can be considered the nonprevailing party's attorney for purposes of awarding sanctions under M.C.L. § 600.2591; MSA 27A.2591. This is a question of law, which this Court reviews de novo. Haworth, Inc. v. Wickes Mfg. Co., 210 Mich.App. 222, 227, 532 N.W.2d 903 (1995).
Both parties urge this Court to look to FR Civ P 11 to analyze this issue. However, we do not find these arguments persuasive.[6] FR Civ P 11 is similar to Michigan's *595 MCR 2.114, which requires an attorney or party to sign pleadings, motions, and other papers filed with the court and provides for sanctions when attorneys or parties sign frivolous pleadings. However, the trial court did not award sanctions pursuant to MCR 2.114 in this case. Instead, the court awarded sanctions pursuant to M.C.L. § 600.2591; MSA27A.2591.
When attorney Gotch filed the complaint in this case, he identified himself as:

Shawn Michael Gotch (P44250)

Damon & Damon

Attorneys for Plaintiffs

220 Lyon St. N.W., Suite 525

Grand Rapids, MI XXXXX-XXXX

Ph. (616) 459-8357
Gotch signed the complaint as "DAMON & DAMON, Attorneys for Plaintiffs, by [signature] Shawn Michael Gotch (P44250)." The pleadings, motions, and other papers filed by Gotch in this case identify him as part of the Damon & Damon law firm. The correspondence attached to plaintiffs' attorney's brief is on letterhead that identifies Gotch as an attorney with the firm. Furthermore, Damon & Damon billed plaintiffs for the work completed on the case. For all these reasons, we believe Damon & Damon can be properly considered plaintiffs' attorney in this case.[7] The trial court properly assessed costs against Damon & Damon under M.C.L. § 600.2591; MSA 27A.2951.
Affirmed.
NOTES
[1] The trial court also held that appellants were entitled to reimbursement from plaintiffs for any amount paid to defendants in excess of fifty percent of the fees and costs awarded. Plaintiffs have not appealed the trial court's order.
[2] Plaintiffs relied on the following provision in the agreement:

CLOSING DATE: The Closing will be held within 10 days after all parties have been notified that all necessary documents have been prepared but not later than MAR[CH] 10, 1995, unless extended by other provisions of this contract.
[3] At the time, GCR 1963, 316.7(b)(3) provided that the plaintiff must pay actual costs when both parties rejected the mediation evaluation and the verdict was more than ten percent below the panel's evaluation. GCR 1963, 316.8 defined actual costs. Giannetti, supra at 652-653, 394 N.W.2d 59.
[4] While the trial court did not specifically address the argument that defendants' motion was untimely, it implicitly rejected the argument in granting defendants' motion.
[5] Defendants claim the trial court also found that M.C.L. § 600.2591(3)(a)(iii); MSA 27A.2591(3)(a)(iii) was met. It is not clear from the trial court's opinion whether it relied on M.C.L. § 600.2591(3)(a)(iii); MSA 27A.2591(3)(a)(iii) in awarding sanctions. In any event, we need not determine whether the trial court clearly erred if it found M.C.L. § 600.2591(3)(a)(iii); MSA 27A.2591(3)(a)(iii) was met because we have determined that sanctions were properly awarded under M.C.L. § 600.2591(3)(a)(ii); MSA 27A.2591(3)(a)(ii).
[6] In any event, we note that appellants cite Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). In Pavelic & LeFlore, at 125-127, 110 S.Ct. 456, the United States Supreme Court held that a law firm could not be held jointly liable for FR Civ P 11 sanctions against its lawyers. However, the 1993 amendments of FR Civ P 11 superseded the rule of Pavelic & LeFlore, supra. Schlaifer Nance & Co., Inc. v. Estate of Warhol, 7 F Supp 2d 364, 373, n. 10 (S.D.N.Y., 1998); Levin & Associates, PA v. Rogers, 156 F.3d 1135, 1140 (C.A.11, 1998). FR Civ P 11 now expressly provides that "[a]bsent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees." FR CivP 11(c)(1)(A).
[7] We limit our decision to the facts presented in this case. We do not decide whether a different set of circumstances would warrant the same result.