STATE OF MICHIGAN
COURT OF APPEALS

ASHLEY LIVONIA A&P, L.L.C.,

Plaintiff-Appellee/Cross-Appellant,

and

GE COMMERCIAL FINANCE BUSINESS
PROPERTY CORPORATION,

Intervening Plaintiff-
Appellee/Cross-Appellant,

v

THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC.,

Defendant,

and

BORMAN'S, INC.,

Defendant-Appellant/Cross-
Appellee,

and

MASTRONARDI PRODUCE-USA, INC.,

Intervening Defendant-
Appellee/Cross-Appellant.

UNPUBLISHED
June 16, 2015

No. 319288
Wayne Circuit Court
LC No. 10-007576-CK

Before: MARKEY, P.J., and OWENS and GLEICHER, JJ.

PER CURIAM.

Defendant Borman's, Inc. appeals as of right the grant of partial summary disposition in favor of plaintiff Ashley Livonia A&P, L.L.C., intervening plaintiff GE Commercial Finance

-1-

Business Property Corporation, and intervening defendant Mastronardi Produce-USA, Inc. in this commercial lease litigation following a discharge in bankruptcy. On cross-appeal, Ashley, GE, and Mastronardi challenge the circuit court's denial of their request for sanctions. We affirm.

## I. BACKGROUND

This case centers on a warehouse that Borman's (connected with the now defunct Farmer Jack grocery store chain) leased and used before its bankruptcy. GE had provided a long-term loan to cover renovations at the property. The property was owned by Ashley, but the loan payments were to be made by Borman's as part of its lease agreement. The property is now occupied by Mastronardi. On the eve of its bankruptcy, Borman's sublet the property to Mastronardi, and Ashley agreed to continue Mastronardi as a tenant even after Borman's was removed from the equation. Although millions of dollars were at stake in this case, the disputes remaining on appeal are minimal, centering on $238,000 that represents Mastronardi's security deposit and September 2010 rent payment.

## II. BORMAN'S APPELLATE CHALLENGES

Various parties asserted entitlement to $238,000 that Mastronardi placed in escrow to cover its security deposit and September 2010 rent payment until the proper recipient could be determined. The circuit court granted summary disposition in favor of Ashley, GE and Mastronardi and distributed the funds to GE and Ashley. Borman's contends that these funds were assets of the bankruptcy estate. The funds were included in the bankruptcy discharge and reorganization plan, Borman's argues, and therefore the bankruptcy court orders have res judicata and collateral estoppel effect on this state court action. Ashley, GE, and Mastronardi deny that the funds were part of the bankruptcy estate, leaving their distribution to the circuit court. That Borman's is not entitled to the funds, they assert, is further supported by the fact that Ashley evicted Borman's for breaching its lease before Mastronardi paid the disputed funds into escrow. Ashley, GE, and Mastronardi also note Borman's failure to include these payments in the schedules accompanying its bankruptcy petition.

As discussed by this Court in *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014), "This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition." Specifically:

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. If the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id.* (quotation marks and citations omitted).]

Borman's arguments are extremely complex and rely on very specific provisions taken from myriad documents executed between the various parties, as well as a significant compilation of documents and orders from the bankruptcy proceedings. Borman's argument

hinges on the inclusion of the disputed funds in the bankruptcy estate. Therefore, this Court's only logical course is to first resolve whether the disputed payments were subject to inclusion in Borman's bankruptcy estate. If they were part of the estate, it will be necessary to discern how bankruptcy law controls the resolution of this matter. If Borman's premise is in error and the payments were not part of the bankruptcy estate, the majority of Borman's arguments folds like a house of cards and are functionally irrelevant.

As discussed in *In re AFI Servs, LLC*, 486 BR 827, 835 (Bankr SD Texas, 2013) (case citations omitted):

> Property of the estate is defined broadly and encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case . . . wherever located and by whomever held." 11 USC 541(a). Despite this broad definition, the estate does not receive more rights than those that the debtor has in property as of the commencement of the case—in other words, if a debtor's interest in property is limited at the time of filing, the estate's right in the property is also so limited.

Of particular significance is the recognition that "[t]he nature and extent of a debtor's interest in property is determined by reference to applicable state law[.]" *Id.*

In *AFI Servs*, the bankruptcy court noted that a multifactored test had been developed over years of caselaw to determine whether escrowed funds are the property of a bankruptcy estate. The determination "depends entirely on the nature and circumstances of the escrow agreement." *Id.* at 840 (quotation marks and citation omitted). We find this test highly instructive. The factors to be considered are:

> (1) whether the debtor initiated or agreed to the creation of the escrow account; (2) whether the debtor exercises any control over the escrow account; (3) the incipient source of the escrow account; (4) the nature of funds within the escrow account; (5) the recipient of the escrow account's remainder funds (if any); (6) the targeted benefit of the escrow account; and (7) the purpose of the escrow account's creation. [*Id.* (quotation marks and citations omitted).]

Application of these factors supports the circuit court's conclusion that the disputed funds were not part of Borman's bankruptcy estate.

First, although Borman's stipulated to Mastronardi's placement of its September 2010 rent and security deposit into the escrow account, the account was initiated by the circuit court in response to Mastronardi's concerns regarding the dispute between Ashley/GE and Borman's over entitlement to the funds. The account was created to safeguard Mastronardi's funds so it would not be required to pay twice for the same indebtedness. Accordingly, the first *AFI Servs* factor does not weigh in Borman's favor. It is clear from the record that Borman's had no control over the account. Therefore, the second *AFI Servs* factor supports that the funds were not property of the bankruptcy estate. The "incipient source" of the funds in the escrow account was Mastronardi's pocket, also suggesting that the account is not part of the bankruptcy estate.

Because there are no "remainder funds" to be distributed, the fifth factor is deemed neutral and does not serve to advance or undermine Borman's contention.

The remaining three factors—(4) "the nature of the funds," (6) "the targeted benefit" of the funds, and (7) "the purpose of the escrow account's creation"—must be evaluated in accordance with applicable state law. *Id.* at 835, 840. The "nature of the funds" is best described by their purpose; the funds covered Mastronardi's September 2010 rent payment and security deposit. The funds were not deposited for the benefit of Borman's, they were deposited for the benefit of whoever was legally determined to be the rightful landlord at the time in question. Similarly, the third and final factor, "the purpose of the escrow account[]" does not favor a determination that the funds were part of the bankruptcy estate. The purpose of the account was to ascertain the proper recipient and to safeguard the funds until such a determination could be made. The account was created to protect Mastronardi from the obligation of having to make multiple payments should the funds be misdirected or misused, not to protect Borman's.

Ultimately, both logic and state law support that the disputed funds were not part of the bankruptcy estate. The escrow account was not initiated or funded until October 18, 2010. At that point, Borman's had already been evicted from the subject premises and dispossessed of the property for the previous two-month period. The monies remitted by Mastronardi reflect an obligation for September 2010. Based on terms of the lease and sublease, Ashley was functioning and recognized as Mastronardi's landlord at that time.

"A sublessee cannot be held liable to his lessor for rents which accrue subsequent to the termination of all rights of the lessor in the leasehold premises." *Cohn v Mary Lee Candies*, 293 Mich 157, 168; 291 NW 259 (1940), citing *Marsh v Butterworth*, 4 Mich 575 (1857), and *City of Hamtramck v Roesink*, 286 Mich 65; 281 NW 539 (1938). Historically, it is well-recognized that "[r]ent is a sum stipulated to be paid for the actual use and enjoyment of another's land. . . . The actual enjoyment of the land is the consideration for the rent which is to be paid[.]" *Marsh*, 4 Mich at 577. "In other words, the full enjoyment for the full term is a condition precedent to the payment of rent." *Id.* There is no dispute that Borman's was lawfully dispossessed when Ashley evicted it from the premises in August 2010. Because Borman's could not legally provide its subtenant, Mastronardi, with possession and quiet enjoyment of the property, its right to receive rent was terminated.

Borman's and Ashley both recognized, even as Borman's was entering a sublease with Mastronardi, that Borman's rights to the warehouse would soon be severed. In accordance with the terms of the nondistrubance and attornment agreement effectuated in conjunction with the sublease:

> [Ashley] hereby agrees that so long as [Mastronardi] is not in default beyond any applicable grace, cure or notice period under the Sublease: (a) [Ashley] shall not name [Mastronardi] in or make [Mastronardi] a party to any summary or other proceeding against [Borman's] by reason of a default by [Borman's] under the Overlease so as to cut off the rights of [Mastronardi] under the Sublease, and (b) [Mastronardi's] possession of the Demised Premises shall not be disturbed and [Mastronardi's] rights under the Sublease shall not be affected by any termination

-4-

of the Overlease, whether under such proceedings or in accordance with the terms of the Overlease or otherwise; and [Ashley] and [Mastronardi] hereby agree that, upon any such termination of the Overlease (i) the sublease shall become a direct lease between [Ashley], as landlord, and [Mastronardi], as tenant[.]

Even an earlier agreement between Ashley and its lender GE supports that the escrowed funds were not part of the bankruptcy estate. The document specifically indicated that GE "is irrevocably entitled to receive the tenant loan rent" identified in the lease between Ashley and Borman's. Accordingly, even if Borman's had a continuing interest in its sublease in September 2010, Borman's would not have been entitled to the entirety of the funds placed in escrow.

Borman's contends that its eviction by Ashley did not terminate its lease agreement. This argument is disingenuous. While Borman's obligations under its lease or contract with Ashley continued, relevant documents such as the nondisturbance and attornment agreement provided a mechanism to avoid disruption of the subtenant's possession and minimize Borman's obligations. It is nonsensical to suggest that Mastronardi would be required to continue to remit a rental payment to Borman's when Borman's no longer functioned as its landlord because Borman's had been evicted by its landlord. After Borman's eviction, it could not fulfill its lease obligation of guaranteeing Mastronardi's continued possession and quiet enjoyment, and that duty fell to Ashley. Borman's no longer had obligations entitling it to payment.

Notably, Borman's does not dispute that it breached its lease with Ashley in June 2010, by failing to remit required rental payments. Long before this event occurred, GE perfected its assignment of rents. In accordance with MCL 554.232:

The assignment of rents, when so made, shall be a good and valid assignment of the rents to accrue under any lease or leases in existence or coming into existence during the period the mortgage is in effect, against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of such mortgage, and shall be binding upon the tenant under the lease or leases upon service of a copy of the instrument under which the assignment is made, together with notice of default. . . .

A "mortgagor's default is sufficient to finalize the mortgagee's interest in the rents as against the mortgagor." *Otis Elevator Co v Mid-America Realty Investors*, 206 Mich App 710, 714; 522 NW2d 732 (1994). The factual history is not disputed. Borman's breached its lease with Ashley in June 2010, and was evicted from the premises in August 2010. GE issued a notice of default on October 1, 2010, instructing Mastronardi to remit rent payments to GE, satisfying the statutory conditions. In accordance with the assignment and statutory provision, Borman's interest in the rents terminated upon completion of the notice and service requirement by GE. *In re Mount Pleasant Ltd Partnership*, 144 BR 727, 734 (Bankr WD Mich, 1992) ("But where the notice and service procedure has been completed, the debtor has lost the legal right to collect the rents."). As discussed in *Otis Elevator Co,* this interpretation of the statutory provision regarding the assignment of rents has been acknowledged by bankruptcy courts as follows:

-5-

"Under section 1 of Michigan's statute, giving 'binding effect' to the assignment is conditioned only upon default. Therefore, at the point of default the mortgagor becomes obligated as contractually provided in the assignment.

* * *

. . . Once default occurs, . . . the assignment becomes binding, and the mortgagee has a "choate" or present vested right in the rents. . . . [*Otis Elevator Co*, 206 Mich App at 714, quoting *Mount Pleasant Ltd Partnership*, 144 BR at 733-734 (first, second, and third alterations in original).]

Because GE's assignment of rents was perfected following the default, Borman's lost any right to collect the rents and the circuit court correctly granted summary disposition and distributed Mastronardi's escrowed rental payment to GE.

Ashley, GE, and Mastronardi also argue that Borman's failure to specifically identify the subject funds in the escrow account as an asset on schedules submitted in the bankruptcy action demonstrate Borman's acknowledgement that they were not assets of the estate. Borman's responds by suggesting that its opponents' provision of these schedules on appeal is an improper expansion of the lower court record. "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002); MCR 7.210(A)(1); MCR 7.212(C)(6), (D)(1). We need not address this argument as the issue can be resolved without reference to the challenged bankruptcy schedules. However, we note that GE did provide the circuit court a link to these documents in its motion for summary disposition, and the circuit court made comments suggesting knowledge of these schedules: "Why wasn't it listed as an asset in the bankruptcy estate if it was an asset?"

Once the circuit court summarily determined that Ashley and GE, rather than Borman's, was legally entitled to the escrowed rent payments, it also correctly determined entitlement to the escrowed security deposit to the appropriate parties. We are confounded by Borman's continued insistence that it is entitled to the security deposit. As Borman's neither possessed nor had a legal right to possess the warehouse, it could bear no future financial repercussions of property damage caused by Mastronardi. Only Mastronardi's acting landlord—Ashley—could suffer such damages down the road that could be offset by the security deposit. We find instructive an analogous case dealing with the provision of security for future utility services. In that matter, the Court of Appeals for the Fifth Circuit recognized that "possible hindrance to the rehabilitative purposes of Chapter XI cannot bootstrap the bankruptcy court's summary jurisdiction to cover property rights which are not in the actual or constructive possession of the debtor." *Matter of Security Investment Props, Inc*, 559 F2d 1321, 1326 (CA 5, 1977). Moreover, the escrowed security deposit is not currently subject to any disbursement. It will be effectively retained in trust until either the conclusion or breach of Mastronardi's tenancy to determine any entitlement to offset. Further, for the reasons previously cited, using the test elucidated in *AFI Servs*, 486 BR at 835, 840, Borman's has not demonstrated that the security deposit was part of the bankruptcy estate.

-6-

In addition, the order relied on by Borman's to suggest that the bankruptcy court had adjudicated ownership of the security deposit is unavailing. The January 11, 2011 bankruptcy court rejection order indicated that "Debtors' Motion does not affect Ashley . . . or [GE]'s rights to the security deposit paid by sub-tenant Mastronardi, pursuant to the Stipulated Order entered on October 18, 2010, in the State Court Action . . . and the Debtors fully reserve their rights, if any, in this respect." Contrary to Borman's assertion, the order acknowledges the claim of Ashley and GE to the security deposit and specifically indicates that their rights are not affected by Borman's rejection of the lease and sublease in the bankruptcy proceedings. As such, the circuit court was correct in its grant of summary disposition and award of the security deposit to Ashley as the current landlord of Mastronardi.

This outcome renders the remainder of Borman's arguments moot. We need not address Borman's res judicata and collateral estoppel claims. The orders of the bankruptcy court did not adjudicate the ownership of the escrowed funds, because they were not assets of the bankruptcy estate. Accordingly, there is nothing more for this Court to review in relation to Borman's appellate challenges. See *Anglers of AuSable, Inc v Dep't of Environmental Quality*, 486 Mich 982, 983; 783 NW2d 502 (2010), amended 783 NW2d 385 (2010) (citation omitted) ("[T]his Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us unless the issue is one of public significance that is likely to recur, yet evade judicial review.").

## III. CROSS-APPEAL

On cross-appeal, Ashley, GE and Mastronardi challenge the circuit court's denial of their motion for sanctions based on the lack of cognizable legal merit and the frivolous nature of Borman's claim to entitlement over the escrowed funds. We review for clear error a lower court's determination whether an action is frivolous and whether sanctions are appropriate. *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008); *In re Attorney Fees & Costs*, 233 Mich App 694, 701; 593 NW2d 589 (1999). "A trial court's decision is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Attorney Fees & Costs*, 233 Mich App at 701.

As discussed in *Holton v Ward*, 303 Mich App 718, 734; 847 NW2d 1 (2014) (some quotation marks and case citations omitted):

> Awards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception. If a pleading is signed in violation of MCR 2.114(D), the party or attorney, or both, must be sanctioned. MCR 2.114(F) provides that "a party pleading a frivolous claim . . . is subject to costs as provided in MCR 2.625(A)(2)." In turn, MCR 2.625(A)(2) states, "[I]f the court finds . . . an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591(1) mandates that, if a claim or defense is found to be frivolous, "the court . . . shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." The statute defines "frivolous" to mean "that at least 1 of the following conditions is met":

-7-

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a).]

"The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted." *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003). "Not every error in legal analysis constitutes a frivolous position." *Id.* (quotation marks and citation omitted). However, in accordance with statutory law and the court rules, an attorney and his or her client are subject to an affirmative duty to conduct a reasonable inquiry into both the factual and the legal viability of their claims and arguments before signing any document. See *Attorney General v Harkins*, 257 Mich App 564, 576; 669 NW2d 296 (2003). An objective standard is used to determine if the inquiry was reasonable. *Id.* Subjective good faith is not relevant. Rather, reasonableness is determined by the effort made in investigating a claim or position, and the determination of reasonable inquiry is dependent upon the particular facts of the case. *Id.*

Initially, the circuit court found Borman's position suspect, given the undisputed factual circumstances presented and applicable state law. The court therefore indicated that it would assess fees if Borman's did not prevail on the motion for summary disposition. Yet, at the conclusion of the summary disposition hearing, the circuit court declined to award attorney fees or sanctions, finding that Borman's "presented an arguable ground for contesting the motion" and that the request for sanctions "was a very close question."

In declining to award sanctions, the circuit court necessarily determined that Borman's claims and arguments could not be construed as "frivolous" as that term is defined in MCL 600.2591(3)(a). Based on a review of the lower court file and proceedings, there is no evidence that Borman's primary purpose in this action was to "harass, embarrass, or injure the prevailing party" as required by MCL 600.2591(3)(a)(*i*). In addition, the majority of the underlying facts in this matter were undisputed, negating the application of MCL 600.2591(3)(a)(*ii*). Borman's arguments arose not from a dispute of the facts, but rather whether the law of bankruptcy was to be applied to those facts. Finally, in reference to MCL 600.2591(3)(a)(*iii*), it must be determined whether the position asserted by Borman's was "devoid of arguable legal merit."

This Court has previously explained:

We will not construe MCL 600.2591 . . . in a manner that has a chilling effect on advocacy or prevents the filing of all but the most clear-cut cases. Nor will we construe the statute in a manner that prevents a party from bringing a difficult case or asserting a novel defense, or penalizes a party whose claim initially appears viable but later becomes unpersuasive. Moreover, an attorney or party should not be dissuaded from disposing of an initially sound case which becomes less meritorious as it develops because they fear the penalty of attorney

fees and costs under this statute.  [*Louya v William Beaumont Hosp*, 190 Mich App 151, 163; 475 NW2d 434 (1991).]

Accordingly:

The statutory scheme is designed to sanction attorneys and litigants who file lawsuits or defenses without reasonable inquiry into the factual basis of a claim or defense, not to discipline those whose cases are complex or face an "uphill fight." The ultimate outcome of the case does not necessarily determine the issue of frivolousness.  [*Id.* at 163-164.]

The issues presented in this case were complicated by the intervening bankruptcy proceedings.  Even before the bankruptcy, the parties disputed entitlement to the subject funds, requiring their placement in escrow until the matter could be resolved.  Earlier in the current litigation, Borman's was actually successful in obtaining the grant of partial summary disposition in its favor on other issues.  As such, we cannot describe as clearly erroneous the circuit court's finding that Borman's "presented an arguable ground" for asserting entitlement to Mastronardi's September 2010 rent payment.

Similarly, although the circuit court found that Borman's claim of entitlement to the security deposit comprised a "very close question" in terms of a sanctions award, we discern no clear error in the court's denial of the request.  Again, given the complexity of the parties' tangled relationships and the confusion caused by the intervening bankruptcy proceedings, there is support for the court's determination that Borman's claim had some legal basis.  "Not every error in legal analysis constitutes a frivolous position.  Moreover, merely because this Court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position."  *Kitchen v Kitchen*, 465 Mich 654, 663; 641 NW2d 245 (2002).

We affirm.


/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Elizabeth L. Gleicher