GRUBBS v K MART CORPORATION

Docket No. 80105. Submitted November 12, 1986, at Grand Rapids. Decided July 20, 1987.

Debra Grubbs, as conservator of the estate of Rhonda A. Moser, a minor, brought a product liability action in the Kalamazoo Circuit Court against K mart Corporation and Meijer, Inc., with regard to pajamas which caught on fire while worn by the minor. Meijer was subsequently dismissed from the suit by stipulation of the parties. After deposing plaintiff's expert, a professor of chemical engineering, K mart learned that the expert may have based his opinion in part on statements given by the minor's parents to plaintiff's attorney and transcribed by a shorthand reporter before the suit was filed. K mart then filed a motion to compel production of the transcribed statements. The trial court, Robert L. Borsos, J., reviewed the statements in camera and ruled that the expert could have relied on a portion of the minor's mother's statement in forming his expert opinion and ordered that portion to be provided to K mart. The court ruled that the minor's father's statement and the rest of the minor's mother's statement were protected by the attorney-client privilege. K mart appealed by leave granted.

The Court of Appeals *held:*

1. The attorney-client privilege attaches to direct communications between a client and his attorney as well as communications made through their respective agents. In this case, the minor's parents were acting as the minor's agents in seeking legal advice and the shorthand reporter was acting as the attorney's agent in transcribing the parents' statements.

2. The attorney-client privilege can only be waived by the client. In this case, the client did not waive the privilege nor was the privilege waived by disclosure of the communications to the shorthand reporter, the expert and the trial court.

Affirmed.

REFERENCES

Am Jur 2d, Witnesses §§ 172 *et seq.*

Applicability of attorney-client privilege to communications made in presence of or solely to or by third person. 14 ALR4th 594.

1. ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS — EVI-
   DENCE.

   The attorney-client privilege attaches to communications made by
   a client to his attorney acting as a legal adviser and made for
   the purpose of obtaining legal advice on some right or privilege;
   the purpose of the privilege is to allow a client to confide in his
   attorney, secure in the knowledge that the communication will
   not be disturbed.

2. ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS — COMMU-
   NICATIONS THROUGH AGENTS — EVIDENCE.

   Communications between an attorney and his client made
   through their respective agents are subject to the attorney-
   client privilege.

3. ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS — WAIVER.

   The attorney-client privilege can only be waived by the client.

*Sloan, Benefiel, Farrer, Newton & Glista* (by
*Gary C. Newton*), for plaintiffs.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*Joel E. Krissoff* and *John A. Ferroli*), for K mart
Corporation.

Before: R. M. MAHER, P.J., and D. F. WALSH and
C. STELL,* JJ.

PER CURIAM. Defendant K mart Corporation
appeals by leave granted from an order of the
Kalamazoo Circuit Court denying K mart's discov-
ery request for two statements in the custody of
plaintiff's attorney. We affirm the trial court's
order.

In the latter part of 1981, Terry Holderman
consulted an attorney, Kevin Kleidon, about a
divorce from his wife, Sandra Holderman (Moser).
In the course of that consultation, Terry Holder-
man mentioned that his daughter, Rhonda Ann
Moser, had been severely injured five years previ-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ously when her pajamas caught on fire. After learning of the injury, Kleidon referred Terry Holderman to a Kalamazoo law firm.

Gary Parker, an attorney with the Kalamazoo law firm, took six statements based upon Kleidon's referral. On September 9, 1981, the statements of Sandra Holderman, Rhonda Ann Moser, Ed Kelly and Barbara Holderman were taken. On November 3, 1981, the statement of Terry Holderman was taken. The statements of Terry and Sandra Holderman were recorded by a certified shorthand reporter.

Some time after the statements were taken, Debra M. Grubbs, another attorney with the Kalamazoo law firm, was appointed as Rhonda Moser's conservator. On April 23, 1982, Grubbs filed the instant action on behalf of Rhonda Moser in the circuit court. Both K mart and Meijer Thrifty Acres were named as defendants, though Meijer was later dismissed by stipulation of the parties.

On August 25, 1982, Sandra Holderman filed her answers to Meijer's interrogatories. In the course of those answers, Sandra Holderman acknowledged the six statements taken by Gary Parker.

On December 12, 1983, K mart took the deposition of Charles D. Beroes, Ph.D., a professor of chemical engineering. Beroes is plaintiff's expert. In the course of the deposition, Beroes testified that he may have based his opinion in part on the statements taken by Gary Parker.

On December 27, 1983, K mart filed a motion for production, inspection and copying of documents pursuant to MCR 2.310. K mart's motion alleged that Beroes reviewed the transcribed statements, that K mart was not permitted by plaintiff's attorney to examine the statements and that the statements might contain critical information relative to the location of the purchase of the pajamas. K

mart further alleged that there was a contradiction between the testimony of Terry Holderman and Sandra Holderman regarding the place of purchase of the pajamas.

K mart's motion was heard on January 9, 1984. The circuit court denied the motion, which was based upon K mart's claim that the statements were necessary for impeachment purposes. The circuit court further held:

> The second ground, however, is something that causes the Court more of a problem. The deposition of the expert was apparently taken, and it appears that he relied in his expert opinion not only on hypothetical questions but also on information furnished him through statements of Plaintiff's witnesses. If these statements were used by the expert in arriving at his opinion, then, because of the lack of any other evidence, the garment having been totally destroyed, or at least not being available, the Court believes that those statements, to the extent that they were revealed to and relied upon by the expert, should be disclosed and furnished to the Defendant.
>
> I recognize that this might cause some editorial work to be necessary by the Court. If there are things in some of those statements that have nothing to do with the expert that the Plaintiff feels should not be disclosed, the Court will pass upon that as to whether or not there ought to be some deletions in the information shown to defense counsel. But to the extent that the expert found material in those statements on which to base his opinions, the Court believes that those statements should be revealed to the Defendant.
>
> If the Plaintiff feels there's no problem with editing any parts of these statements out, he should furnish those statements within 20 days. If the Plaintiff feels that there is some editing necessary to protect Plaintiff's interest, the Plaintiff shall file within 20 days a Motion to Delete parts of those statements.

Plaintiff did file a motion to delete and on May 7, 1984, the circuit court conducted an in camera review of the six statements, explaining:

> All right. Well, the Court believes that statements taken of your own client are privileged. They are putting on paper what the client tells his lawyer and, if a court reporter is brought in instead of the lawyer's secretary or instead of using a dictaphone, this doesn't seem to me to change the situation; that it's still a privileged communication. This privilege can be lost just as most privileges can be and, if those statements were then of a nature that would help an expert to form a decision, then I think plaintiff has to determine whether or not he wants to furnish those statements to the expert, so the expert can rely on them.
>
> I don't think that necessarily furnishing that to an expert alone would waive the privilege but, if there was something in there that the expert could rely upon and does rely upon and then that expert is offered as a witness, as I understand as [sic] is being offered in this case, sometimes if you get an adverse result, you might not want that result, but assuming that the expert is going to be helpful to the plaintiff, then I think possibly the privilege is waived, and I will look at the statements if they are available right now to see whether there's anything in there that an expert on inflammatory [sic] clothing could possibly have used in coming to a decision as to what his opinion should be in the matter.

On May 16, the circuit court entered its opinion, ordering that one page of the transcript of Sandra Holderman's statement be provided to K mart. The circuit court reasoned that the page contained testimony upon which Dr. Beroes could have relied in forming his expert opinion. The balance of Sandra Holderman's statement and all of Terry Holderman's statement were held to be protected.

On appeal, K mart argues that the statements of Terry and Sandra Holderman were neither privileged nor protected by Michigan's work product discovery rule.

The attorney-client privilege attaches to communications made by a client to the attorney acting as a legal adviser and made for the purpose of obtaining legal advice on some right or privilege. *Alderman v People,* 4 Mich 414, 422 (1857). The purpose of the privilege is to allow a client to confide in his attorney, secure in the knowledge that the communication will not be disturbed. *Parker v The Associates Discount Corp,* 44 Mich App 302, 306; 205 NW2d 300 (1973); *Kubiak v Hurr,* 143 Mich App 465, 472-473; 372 NW2d 341 (1985).

K mart first argues that the privilege did not attach because Terry and Sandra Holderman were not "clients." We disagree. Communications made through a client's agent are privileged. *People v Bland,* 52 Mich App 649, 653; 218 NW2d 56 (1974), citing 58 Am Jur, Witnesses, § 498, p 279. See also 81 Am Jur 2d, Witnesses, §§ 191-192, pp 226-229. It is apparent that Rhonda, who was approximately nine years old at the time, was not able to bring suit in her own name. GCR 1963, 201.5(1) and (2). We believe that Rhonda's parents were, of necessity, acting as her agents in seeking legal advice.

K mart also argues that, because the statements were recorded in front of a third party—the certified shorthand reporter—the privilege was waived. It is clear to us that the reporter was acting as the agent of the attorney and that the privilege was not waived by her presence. *Stephenson v Golden (On Rehearing),* 279 Mich 710, 734-735; 276 NW 849 (1937). Since a recorded statement was essential to provide an accurate factual base from

which their attorney might provide legal advice, we believe that the privilege was not waived.

K mart next argues that the attorney-client privilege was waived by disclosure to the trial court of the statements. However, the statements were provided under court order for an in camera review necessitated by K mart's motion. To conclude that the attorney-client privilege was thus waived is to conclude that K mart held the power to waive the privilege merely by asserting a need for the information in a motion. We cannot draw that conclusion. It is well established that the privilege is the client's alone and may only be waived by the client. *Kubiak, supra,* 473.

Finally, K mart contends that the privilege was waived by disclosure of the information to plaintiff's expert. Again we disagree. *People v Hilliker,* 29 Mich App 543, 547; 185 NW2d 831 (1971).

We conclude that the statements provided by Terry and Sandra Holderman were privileged communications and were therefore not discoverable beyond those portions ordered by the trial court. Our resolution of this matter makes unnecessary discussion of the other issues raised by K mart.

Affirmed.