KOSTER v JUNE'S TRUCKING, INC

Docket No. 212741. Submitted July 11, 2000, at Detroit. Decided December 26, 2000, at 9:40 A.M.

Marjorie Koster, as personal representative of the estate of Douglas W. Koster, deceased, and two other personal representatives of decedents' estates obtained a judgment in the Wayne Circuit Court against June's Trucking, Inc., Clair G. June, and Richard June in a wrongful death action. The defendants' liability insurer, Michigan Mutual Insurance Company, paid benefits to the extent of the defendants' liability policy, leaving a balance of the judgment unpaid. The plaintiffs filed writs of garnishment against several insurers of National Farmers Organization, which had hired the defendants to haul goods that were contained in the defendants' truck when it collided with the vehicle in which the decedents were riding. National had also been named as a defendant in the wrongful death action, but was found not to be liable. During the garnishment proceedings, the plaintiffs had issued to Michigan Mutual subpoenas duces tecum requesting Michigan Mutual's complete claims file concerning the accident. Michigan Mutual sought a protective order, claiming the file to be irrelevant to the matter and to contain privileged communications. The court, Paul S. Teranes, J., ordered Michigan Mutual to produce its claims file to the plaintiffs, except for those documents Michigan Mutual considered protected by the attorney-client and work-product privileges, which were to be separately identified and submitted to the court for an in camera review. After Michigan Mutual produced the documents as ordered, the court, without conducting an in camera review, agreed that the documents for which Michigan Mutual claimed the attorney-client privilege could be protected by the privilege, but the court further concluded that the plaintiffs stood in the shoes of the defendants in the garnishment proceedings, thus vesting in the plaintiffs the sole right to claim the privilege. The court ordered the entire file turned over to the plaintiffs. Michigan Mutual appealed from that order by leave granted.

The Court of Appeals held:

1. There was no attorney-client relationship between Michigan Mutual and the attorney it hired to represent its insureds. Michigan Mutual cannot assert any attorney-client privilege.

2. Michigan Mutual made a sufficient claim that the documents were protected by the work-product doctrine.

3. The plaintiffs and the court were put on notice by Michigan Mutual regarding the nature of the privileges asserted and the documents to which the alleged privileges applied.

4. Pursuant to MCR 2.302(B)(3)(a), documents and tangible things prepared in anticipation of litigation by or for an insurer of a party are not discoverable absent a showing that the party seeking discovery has a substantial need for the materials and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. The order must be reversed and the matter must be remanded to the trial court, which must conduct an in camera inspection of the documents to determine whether they are protected from discovery by the work-product doctrine. If the documents are so protected, the burden is on the plaintiffs to show substantial need and undue hardship and, if plaintiffs do so, any order must protect against disclosure of the thought processes of the defendants' representatives.

Reversed and remanded.

1. INSURANCE — ATTORNEY AND CLIENT — ATTORNEY-CLIENT RELATIONSHIP.

An attorney-client relationship does not exist between an insurance company and an attorney representing the insurance company's insured; the attorney's sole loyalty and duty is owed to the client, not to the insurer, even where the insurer retains the attorney to represent the insured in a lawsuit filed against the insured.

2. EVIDENCE — WORK-PRODUCT DOCTRINE.

The determination whether documents may be protected by the work-product doctrine is an issue of law (MCR 2.302[B][3][a]).

3. INSURANCE — WORK-PRODUCT DOCTRINE —DISCOVERY.

Documents and tangible things prepared in anticipation of litigation by or for an insurer of a party are not discoverable absent a showing that the party seeking discovery has a substantial need for the materials and is unable without undue hardship to obtain the substantial equivalent of the materials by other means; any production ordered must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of the attorney for the insured or other representative of the insured concerning the litigation (MCR 2.302[B][3][a]).

*Goodman, Lister & Peters, P.C.* (by *Richard M. Goodman* and *Thomas W. Stephens*), for the plaintiffs.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Noreen L. Slank, J. Mark Cooney,* and *Stuart A. Ulanoff*), for Michigan Mutual Insurance Company.

Before: BANDSTRA, C.J., and GAGE and WILDER, JJ.

BANDSTRA, C.J. Michigan Mutual Insurance Co. (Michigan Mutual)[1] appeals by leave granted from an order entered in a garnishment proceeding compelling it to turn over to plaintiffs its entire file regarding a claim and litigation against defendants, its insured. Michigan Mutual contends that it should not be required to produce defendants' file, when the corporate defendant has dissolved and the individual defendants have died, because the file is protected by the attorney-client privilege and the work-product privilege. We conclude that the portions of the file for which a privilege was asserted may be protected by the attorney work-product doctrine. However, we further conclude that, in order to determine the extent to which the documents are protected, the court must first conduct an in camera review of the challenged documents. Accordingly, we reverse and remand.

This case arose from an accident that occurred in 1985 in Oakland County. A truck driven by defendant Richard June and owned by defendants June Trucking, Inc., and Clair G. June crossed a median on I-96

---

[1] Michigan Mutual Insurance Co. is now known as Amerisure. We will use the name, Michigan Mutual, that was used in the pleadings and other documents in the case.

and hit a vehicle in which plaintiffs[2] rode, killing them. Defendants had an insurance policy with Michigan Mutual. Pursuant to the policy, Michigan Mutual retained a law firm to represent defendants in the wrongful death suits filed on behalf of plaintiffs. The suits were consolidated for trial and, in 1993, a judgment was entered against defendants.[3] Michigan Mutual paid benefits to the extent of defendants' liability policy, leaving a balance of the judgment unpaid.

After judgment, plaintiffs filed writs of garnishment naming several insurers of NFO as garnishee defendants. During the course of the garnishment proceedings, plaintiffs had issued subpoenas duces tecum to Michigan Mutual requesting its complete claims file concerning the accident. Michigan Mutual moved for a protective order, contending that it had paid to the limits of the policy and that the claims file was "irrelevant to the pending matter and contains privileged communications." On March 16, 1998, the trial court entered an order directing that Michigan Mutual produce its claims file to plaintiffs, except for those documents it considered privileged. The documents for which Michigan Mutual claimed a privilege were "to be separately identified and submitted to the court for an in camera review." On June 15, 1998, Michigan Mutual produced the documents as ordered and listed documents that it believed were protected by the

---

[2] The actual plaintiffs in this case are the personal representatives of the estates of the persons killed in the accident. This opinion will refer to both the personal representatives and their decedents as "plaintiffs."

[3] The suits also named as a defendant National Farmers Organization (NFO), which had hired defendants to haul the goods contained in defendants' trailer. However, the jury found liability only on the part of defendants, finding that June's Trucking, Inc., was an independent contractor.

attorney-client and work-product privileges. It appears from the record that no in camera review was conducted. The court agreed that the documents for which Michigan Mutual claimed the attorney-client privilege could be protected by the privilege, but further concluded that plaintiffs "stand[] in the shoes" of defendants in the garnishment proceedings, thus vesting in plaintiffs the sole right to claim the privilege. Accordingly, the court ordered that the entire claims file be turned over to plaintiffs. It is from that order that Michigan Mutual appeals.

Michigan Mutual first argues that the documents are protected from production by the attorney-client privilege. A trial court's decision to grant or deny discovery is reviewed by the Court of Appeals for abuse of discretion. *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). However, we review de novo a decision regarding whether the attorney-client privilege may be asserted. *Id.* at 618.

Our Supreme Court has reasoned that "the tripartite relationship between insured, insurer, and defense counsel contains rife possibility of conflict" because "(t)he interest of the insured and the insurer frequently differ." *Atlanta Int'l Ins Co v Bell*, 438 Mich 512, 519; 475 NW2d 294 (1991). Accordingly, the Court has held that " '[n]o attorney-client relationship exists between an insurance company and the attorney representing the insurance company's insured. The attorney's sole loyalty and duty is owed to the client, not to the insurer.' " *Kirschner v Process Design Associates, Inc*, 459 Mich 587, 598; 592 NW2d 707 (1999), quoting *Michigan Millers Mut Ins Co v Bronson Plating Co*, 197 Mich App 482, 492; 496 NW2d 373

(1992). On the basis of these precedents, we conclude that there was no attorney-client relationship between Michigan Mutual and the attorney retained to represent its insureds and, as a result, Michigan Mutual cannot assert any attorney-client privilege.

Michigan Mutual also argues that the attorney-client privilege should be extended to it because, as the insurer, it acted as the agent of defendants, the clients. We recognize that the attorney-client privilege has sometimes been applied to communications made through a client's agent. *Reed Dairy Farm, supra* at 618; *Grubbs v K mart Corp,* 161 Mich App 584, 589; 411 NW2d 477 (1987). In *Grubbs,* discussions between the attorney for a child and the child's parents were held to be protected by the attorney-client privilege, with this Court concluding that the parents were agents for the child, who could not maintain a suit on her own behalf. *Id.* On the other hand, this Court found in *Reed Dairy Farm, supra* at 619, that a paralegal working for the defendant, Consumers Power, was not an agent for purposes of the privilege.

Neither *Grubbs* nor *Reed Dairy Farm* involved the situation at issue here and our Supreme Court has explicitly held that no relationship exists between counsel for an insured and the insurer. *Kirschner, supra* at 598. To accept Michigan Mutual's argument that it is entitled to assert the attorney-client privilege as an agent would be to recognize indirectly a relationship that the courts of this state have refused to recognize directly. Michigan case law has not extended the attorney-client relationship to the insurer and this Court will not do so here.[4]

---

[4] We recognize that the trial court found that the attorney-client privilege would apply, but further held that plaintiffs "stepped into the shoes"

Appellant also argues that the documents are protected by the work-product doctrine. Appellant raised this issue in its memorandum in response to plaintiffs' motion for sanctions, arguing that the contested documents were protected both by the attorney-client privilege and by the work-product doctrine. The trial court, however, did not reach this issue. Issues that are not properly addressed by the trial court are not preserved for review. *Herald Co, Inc v Ann Arbor Public Schools*, 224 Mich App 266, 278; 568 NW2d 411 (1997). However, this Court may review issues that were not decided by the trial court where the issue is one of law and all the necessary facts were presented. *D'Avanzo v Wise & Marsac, PC*, 223 Mich App 314, 326; 565 NW2d 915 (1997). Whether documents may be protected by the work-product doctrine is an issue of law. *People v Gilmore*, 222 Mich App 442, 448; 564 NW2d 158 (1997). Accordingly, we will review this issue to determine whether the work-product doctrine could apply to documents contained in the claims file.

As a preliminary matter, we must address two procedural arguments made by plaintiffs. First, plaintiffs argue that Michigan Mutual never claimed that the

---

of defendants for purposes of asserting the privilege. Apparently, the court relied on *Meirthew v Last*, 376 Mich 33, 40; 135 NW2d 353 (1965), a case involving the question whether a plaintiff in a personal injury case had a right, after judgment, to pursue an action against the defendant's insurer. Even if we assume that this right would include a right to access to the files of the recalcitrant insurer, we see a substantial difference between *Meirthew* and the present case, in which Michigan Mutual is not a party in the garnishment proceeding. It is one thing to say that a plaintiff may pursue a denial of coverage of the defendant, and another to say that a plaintiff may have access to the files of a third-party insurer who has not refused coverage. Nonetheless, this Court will not reverse a decision of the trial court where it reaches the right conclusion for the wrong reasons. *DeHart v Lunghamer Chevrolet, Inc*, 239 Mich App 181, 183; 607 NW2d 417 (1999).

documents in the claims file were protected by the work-product doctrine. We disagree. As we noted previously, Michigan Mutual's memorandum of law, filed with the court on June 24, 1998, clearly referred to the documents as work product and discussed why they should be protected from discovery. This was sufficient to make the court aware of the legal basis of Michigan Mutual's objection.

Next, plaintiffs argue that Michigan Mutual made an improper tender of the documents and, as a result, forfeited any right to an in camera inspection of the documents. We disagree. Michigan Mutual tendered the documents, along with a letter signed by counsel explaining the general classification of various groups of documents, along with the objection that applied to those documents, whether the objection was based on privilege or irrelevancy. We have acknowledged in the past the burden placed on trial courts in determining claims of work-product or attorney-client privilege, especially in cases of complex litigation. See *Great Lakes Concrete Pole Corp v Eash*, 148 Mich App 649, 656, n 6; 385 NW2d 296 (1986). In *Great Lakes*, we pointed to procedures used in the federal courts to alleviate the burden and assist the trial court in evaluating such claims, procedures that include identifying each document by number, date, author, addressee, recipients of copies, and the general nature of the documents. *Id.* We further noted that the use of such procedures would facilitate "adversarial input on the appropriateness of disclosure while protecting disclosure of the privileged contents." *Id.* at n 6, 657.

In this case, the letter provided to the court along with the documents placed the documents in four different categories: (1) communications between coun-

sel and Michigan Mutual; (2) internal communications within Michigan Mutual generated as a result of advice or information of counsel; (3) billing information; and (4) information that plaintiffs had agreed not to seek. This list, taken together with Michigan Mutual's memorandum of law, put both plaintiffs and the court on notice regarding the nature of the privileges asserted and the documents to which the alleged privileges applied. While it may have been more advisable to identify the documents with greater specificity, it cannot be said that the explanation provided by Michigan Mutual did not identify the documents sufficiently to justify an in camera inspection.

The work-product doctrine, MCR 2.302(B)(3)(a), provides as follows:

> Subject to the provisions of subrule (B)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subrule (B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only on a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

MCR 2.302(B)(3)(a) is virtually identical with its federal counterpart, FR Civ P 26(b)(3). As a result, it is appropriate to rely on federal cases for guidance in determining the scope of the work-product doctrine. *In re Subpoena Duces Tecum to the Wayne Co Pros-*

*ecutor*, 191 Mich App 90, 94; 477 NW2d 412 (1991), remanded on other grounds 444 Mich 860 (1993).

Although the rule protecting work product from discovery is most often used to protect attorneys' litigation files, under the plain language of the rule litigation files prepared by insurers are also protected. MCR 2.302(B)(3)(a) applies to litigation files of a party's "representative (including an . . . indemnitor [or] insurer . . . )." Federal courts have recognized this protection for nonlawyer "representatives," including insurers. See *Logan v Commercial Union Ins Co*, 96 F3d 971, 977 (CA 7, 1996); *United Coal Cos v Powell Constr Co*, 839 F2d 958, 966 (CA 3, 1988). Finding the rule inapplicable to "anyone other than a lawyer is inconsistent with the plain language of the rule." *Id.*

In the present case, Michigan Mutual was defendants' insurer. Under the clear language of MCR 2.302(B)(3)(a), documents and tangible things prepared in anticipation of litigation by or for an insurer of a party are not discoverable absent a showing that the party seeking discovery has a substantial need for the materials and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Plaintiffs argue summarily that this is the case here. However, the current subject matter of the garnishment action is whether defendants were covered by NFO's insurance policies. The scope of coverage is generally a legal issue, determined by the language of the policy if that language is clear. See *Vanguard Ins Co v Racine*, 224 Mich App 229, 232; 568 NW2d 156 (1997). Beyond plaintiffs' bare allegation, the record contains nothing to indicate that the decision will be determined by anything other than the

language of the policies issued by NFO's insurers. We cannot conclude that plaintiffs are entitled to discovery of privileged material in the possession of Michigan Mutual. Further, even if plaintiffs can meet this burden, any production ordered would have to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories" of defendants' attorney or of Michigan Mutual, their representative. MCR 2.302(B)(3)(a).

In any event, although we have determined that the documents could be protected under the work-product doctrine, we cannot conclude that, in fact, the documents *are* so protected. As previously discussed, the trial court did not reach this issue. Accordingly, the trial court must conduct an in camera inspection of the documents to determine whether they are protected from discovery by the work-product doctrine. If they are, the burden is on plaintiffs to show "substantial need" and "undue hardship" and, if plaintiffs do, any order must "protect against disclosure" of the thought processes of defendants' representatives.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.