Meter, J.
This appeal involves sanctions imposed against Neil Juliar, a former attorney of defendant Jackhill Oil Company, and his law firm for raising a frivolous defense in a suit between plaintiffs and Jackhill. We affirm.
In 1987, plaintiffs sued Jackhill because of a dispute involving an agreement to develop oil interests on land leased by plaintiffs. Plaintiffs contended that under the terms of the parties’ agreement, Jackhill owed them money from several wells that had produced oil. A jury eventually sided with plaintiffs and awarded them approximately $1,300,000. Jackhill later sued attorneys Juliar and Phillip Bowen, as well as their firm, for malpractice in conjunction with ser *93 vices rendered in the underlying litigation. While following the progress of the malpractice litigation, plaintiffs learned that a certain document relevant to the 1987 litigation had not been produced by Jackhill or its counsel, even though it was requested in discovery and its existence rendered one of the asserted defenses frivolous. The document, a “letter of intent” dated June 22, 1983, set forth oil-drilling and payment terms favorable to plaintiffs in the underlying lawsuit. The letter had been signed by Neil Clevidence, an officer of plaintiffs, as well as by Joe Savarino, of Jackill. It contained handwritten changes made by Bowen.
In November 1998, shortly after obtaining a copy of the document, plaintiffs moved for sanctions in the 1987 case. They argued that if the document had not been improperly withheld and if misrepresentations to the lower court had not been made, the case would have resolved much faster and perhaps Jackhill would still have been collectible with respect to the jury-produced judgment. The trial court eventually ordered sanctions of $48,177 against Jackhill, Juliar, and the law firm under MCR 2.625(A)(2) and MCL 600.2591(3)(a)(ii) and (iii).
Appellants first argue that the trial court erred in imposing sanctions because Juliar, in failing to mention the existence of the 1983 letter, did not act .unreasonably. When Juliar discovered the existence of the signed letter in 1987, he knew that the letter had been found in the desk drawer of Savarino, who died in 1985. Appellants contend, therefore, that Juliar reasonably concluded that Savarino had never communicated his acceptance of the letter to plaintiffs and that the letter therefore was irrelevant.
*94 This Court will not disturb a trial court’s finding that a defense was frivolous unless the finding was clearly erroneous. Szymanski v Brown, 221 Mich App 423, 436; 562 NW2d 212 (1997). “A decision is clearly erroneous if this Court is left with a definite and firm conviction that a mistake has been made.” Id. We find no clear error here.
MCL 600.2591[1] states:
(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.
(3) As used in this section:
(a) “Frivolous” means that at least 1 of the following conditions is met:
(i) The party’s primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
(ii) The party had no reasonable basis to believe that the facts underlying that party’s legal position were in fact true.
(iii) The party’s legal position was devoid of arguable legal merit.
To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made. See In re Attorney Fees & Costs, 233 Mich App 694, 702; 593 NW2d 589 (1999). The factual deter *95 mination by the trial court depends on the particular facts and circumstances of the claim involved. Dillon v DeNooyer Chevrolet Geo, 217 Mich App 163, 169; 550 NW2d 846 (1996).
In this case, the trial court found that certain of Juliar’s arguments to the court were devoid of arguable legal merit and that there was no reasonable basis for them. Among other things, the trial court specifically took issue with Juliar’s representations at a summary disposition hearing in 1988 that (1) the Joint Development Agreement (jda), a document separate from the 1983 letter of intent, was the only agreement accepted by all the parties, (2) the 1983 letter of intent was a unilateral letter and there was no acceptance of it, (3) lawyers cannot create contracts simply by writing a letter to another lawyer, (4) an unsigned agreement violates the statute of frauds, (5) there was no indication that anyone accepted the letter on behalf of Jackhill, and (6) plaintiffs were trying to convert a unilateral letter into a contract. The trial court pointed out that when Juliar made the above statements, he knew that a signed letter of intent existed but concluded that the letter, although signed, was not an “accepted” agreement because it had not been returned to plaintiffs. The trial court concluded that constituted a frivolous defense because Juliar had no reasonable basis to believe that the facts underlying the legal position about the letter were true or that the contract at issue should be interpreted in the manner advocated.
The trial court’s findings that Juliar offered a frivolous defense are not clearly erroneous. Looking at the facts known to Juliar during the litigation, he had no reasonable basis to argue that the letter was unilat *96 eral and unsigned and did not constitute an agreement between the parties. He also had no reasonable basis to argue that plaintiffs’ interpretation of the parties’ agreement was incorrect. Juliar knew that the letter clarified plaintiffs’ position regarding the agreement of the parties and that the letter was detrimental to Jackhill. Juliar further knew that the letter contained Bowen’s handwritten changes and that the letter was signed by both parties. In addition, Juliar knew that money changed hands shortly after the letter was signed. Juliar was aware that Clevidence could not recall if the letter was accepted. Juliar withheld the letter that would have refreshed Clevidence’s memory. The letter was not privileged or confidential, as will be discussed. The letter fit within the document request that accompanied Bowen’s deposition notice. There is no evidence that Juliar adequately investigated the circumstances surrounding the signing of the letter. Certainly, he did not inquire of Clevidence about how Clevidence’s signature came to be on the document. Juliar misrepresented the status of the letter, improperly withheld the document from discovery, and made arguments as if the document did not exist. In doing so, he offered a frivolous defense.
Further, Juliar had no authority and cites no legal precedent that would allow him such authority, to unilaterally determine whether the letter had been accepted.
Under the principles governing contracts, an acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act *97 sufficient for that purpose. [Kraus v Gerrish Twp, 205 Mich App 25, 45; 517 NW2d 756 (1994), aff’d in part and remanded in part on other grounds 451 Mich 420; 547 NW2d 870 (1996).]
“Decisions regarding the legitimacy of an offer and acceptance revolve around the particular facts pertaining to a specific transaction . . . Patrick v US Tangible Investment Corp, 234 Mich App 541, 549; 595 NW2d 162 (1999). Whether an offer has been accepted and a contract formed involves a factual determination. Juliar’s decision to unilaterally determine that the letter did not constitute an acceptance of the terms by Jackhill and his decision to therefore withhold the document was inappropriate. Juliar had no authority to decide issues of fact or law. More importantly, Juliar had no authority to withhold a document on the basis of his own speculation and determination about the significance and relevance of the document. Had Juliar made a reasonable inquiry about the signed letter, he would have learned about the circumstances tinder which the letter was signed.
We note that appellants argue that the trial court should not have considered Clevidence’s 1998 affidavit, in which he recalled witnessing the signing of the letter by Savarino. Appellants insist that this affidavit should not have been considered because it contradicted Clevidence’s 1987 deposition testimony. However, in ruling on the motion for sanctions, the trial court, while obviously aware of the 1998 Clevidence affidavit, did not rely on it or even mention it. The trial court specifically concentrated on Juliar’s argument about what he knew at the time he decided to withhold the letter from discovery and make frivolous arguments and misrepresentations. Thus, it cannot be *98 said that the trial court improperly relied on the affidavit.
Moreover, Clevidence’s 1998 affidavit did not, contrary to appellants’ argument, directly contradict his 1987 deposition testimony. During his deposition, Clevidence was unsure whether the letter was formally accepted, could not recall anyone calling him up and accepting it, and could not recall whether acceptance was communicated. The affidavit reveals that, after seeing the signed document, Clevidence recalled the circumstances under which it was signed. We discern no direct contradiction.
Next, appellants argue that the trial court erred in rejecting their claim that Juliar properly refused to produce the letter because it fell within the attorney-client privilege. Appellants contend that because no one outside the law firm knew Savarino had signed the letter and the only copy was located in Savarino’s desk after his death, a reasonable person would have and should have concluded that the signed letter was a secret of the client. Appellants further contend that the trial court erred in ruling that Juliar “had a duty at least in an ex parte proceeding to inform the tribunal of all material facts.” We review issues of privilege de novo. Koster v June’s Trucking, Inc, 244 Mich App 162, 166; 625 NW2d 82 (2000).
MRPC 1.6 provides, in relevant part:
(a) “Confidence” refers to information protected by the client-lawyer privilege under applicable law, and “secret” refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
*99 (b) Except when permitted under paragraph (c), a lawyer shall not knowingly:
(1) reveal a confidence or secret of a client;
(2) use a confidence or secret of a client to the disadvantage of the client; or
(3) use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.
(c) A lawyer may reveal:
(1) confidences or secrets with the consent of the client or clients affected, but only after full disclosure to them;
(2) confidences or secrets when permitted or required by these rules, or when required by law or by court order;
(3) confidences and secrets to the extent reasonably necessary to rectify the consequences of a client’s illegal or fraudulent act in the furtherance of which the lawyer’s services have been used....
Appellants rely on MRPC 1.6 to argue that Juliar was precluded from revealing the signed letter. We do not agree with their position.
The attorney-client “privilege attaches only to confidential communications by the client to his attorney, which are made for the purpose of obtaining legal advice.” McCartney v Attorney General, 231 Mich App 722, 731; 587 NW2d 824 (1998). It attaches to direct communications between client and attorney as well as to communications made through their respective agents. Reed Dairy Farm v Consumers Power Co, 227 Mich App 614, 618; 576 NW2d 709 (1998). The scope of the privilege is narrow. Id. at 618-619. The privilege does not automatically shield documents given by a client to his attorney. McCartney, supra at 731. As stated in McCartney,
“[P]re-existing documents which could have been obtained by court process from the client when he was in *100 possession may also be obtained from the attorney by similar process following the transfer by the client in order to obtain more informed legal advice.” [Id., quoting Fisher v United States, 425 US 391, 403-404; 96 S Ct 1569; 48 L Ed 2d 39 (1976).]
The signed letter was not a direct communication between client and attorney. It was a document drafted by plaintiffs’ attorney and signed by both plaintiffs’ representative and Jackhill’s representative. There was no privilege attached to the signed letter while it was in Jackhill’s possession. When another law firm employee turned the document over to Juliar in the course of the litigation, the nonprivileged document did not become a privileged document. See id. The document was simply not a privileged document as defined in MRPC 1.6. Nor was the document a “secret” of the client. If Juliar had conducted a reasonable investigation regarding the circumstances surrounding the signing of the letter, he would have learned that Savarino did communicate his acceptance of the terms of the letter by signing it in front of Clevidence.[2]
Moreover, if Juliar was unsure whether disclosure of the document was required, he should have asked for an in camera review of the document. In making its ruling and order, the trial court repeatedly noted that Juliar should have produced the letter for an “ex parte” review. It is clear that the trial court used an incorrect term and meant to suggest that an in cam *101 era review should have been requested by Juliar instead of his making a unilateral decision to withhold a document during the discovery process. “An in camera proceeding is the appropriate vehicle to determine whether information requested in discovery proceedings is protected by a statutory privilege.” LeGendre v Monroe Co, 234 Mich App 708, 742; 600 NW2d 78 (1999). A judge is presumed to know and understand the law. See, e.g., People v Wofford, 196 Mich App 275, 282; 492 NW2d 747 (1992). We do not agree with appellants that the trial court advocated an improper communication by inadvertently referring to “ex parte” contact.
Next, appellants argue that the trial court erred in awarding sanctions under MCR 2.625 and MCL 600.2591 because this rule and statute require a finding that an action or defense was frivolous. According to appellants, neither allows for sanctions if the trial court finds that a particular, discrete statement or argument is frivolous.
As noted earlier, MCR 2.625(A)(2) states:
In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591 ____
MCL 600.2591 states, in relevant part:
(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.
(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by *102 the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.
As noted in Ypsilanti Housing Comm v O’Day, 240 Mich App 621, 624; 618 NW2d 18 (2000):
The principal goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. In determining intent, this Court first looks at the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted, unless a literal construction of the statute would produce unreasonable and unjust results inconsistent with the purpose of the statute. In construing statutes, the court should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. [Citations omitted.]
The plain language of the statute states that costs and fees can be awarded “if a court finds that a civil action or defense” is frivolous, and the court rule uses similar language. The statute and court rule do not use the phrase “the” to modify the word “defense.” Recently, in Robinson v Detroit, 462 Mich 439, 461-462; 613 NW2d 307 (2000), our Supreme Court analyzed the difference in the use of the terms “a” and “the” in the context of statutory construction:
We agree with the following analysis found in the dissent in Hagerman v Gencorp Automotive, 457 Mich 720, 753-754; 579 NW2d 347 (1998):
“Traditionally in our law, to say nothing of our classrooms, we have recognized the difference between ‘the’ and ‘a.’ ‘The’ is defined as ‘definite article. 1. (used, esp. before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article a or an) . .. .’ Random House Webster’s College Dictionary, p 1382. Further, we must follow these distinctions *103 between ‘a’ and ‘the’ as the Legislature has directed that ‘[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language . . . MCL 8.3a; MSA 2.212(1). Moreover, there is no indication that the words ‘the’ and ‘a’ in common usage meant something different at the time this statute was enacted . . . .”
Further, recognizing that “the” is a definite article, and “cause” is a singular noun, it is clear that the phrase “the proximate cause” contemplates one cause. [Emphasis in original.]
MCR 2.111(F)(1) specifically indicates that a “pleader may assert as many defenses, legal or equitable or both, as the pleader has against an opposing party.” That a party may assert more than one defense is thus well established. The Legislature chose to make a frivolous defense sanctionable. The use of “a” instead of “the” supports the conclusion that the statute, as well as the court rule, does not require that the entire defense or all the asserted defenses be found frivolous in order for sanctions to issue. Rather, sanctions may issue if any defense is frivolous. In Louya v William Beaumont Hosp, 190 Mich App 151, 163-164; 475 NW2d 434 (1991), this Court stated that
[t]he statutory scheme is designed to sanction attorneys and litigants who file lawsuits or defenses without reasonable inquiry into the factual basis of a claim or defense, not to discipline those whose cases are complex or face an “uphill fight.” The ultimate outcome of the case does not necessarily determine the issue of frivolousness. [Emphasis added.]
Appellants’ argument that one frivolous defense cannot be sanctioned if other, reasonable defenses are asserted is disingenuous.
*104 In addition to their untenable argument that sanctions can be ordered only if the entire defense is found frivolous, appellants argue that there must be a demonstrated causal relationship between the frivolous defense and the costs awarded. According to appellants, the trial court failed to recognize the necessity of this causal relationship and therefore erred in its award of sanctions. We review the amount of an award of sanctions for an abuse of discretion. In re Attorney Fees & Costs, supra at 704.
The trial court found that defendant asserted a frivolous defense under MCL 600.2591(3)(a)(ii) and (in). Plaintiffs were clearly the prevailing parties. Plaintiffs were therefore entitled to “reasonable” costs incurred, including court costs and attorney fees. See MCL 600.2591(2). Appellants argue that “reasonable” means only those costs directly related to the withholding of the signed letter, that plaintiffs incurred no proven costs as a direct result of the withholding, and that therefore no sanctions should have been awarded. However, plaintiffs cite no binding authority for their argument that such a causal connection is required.[3] Accordingly, the issue is essentially abandoned. See Magee v Magee, 218 Mich App 158, 161; 553 NW2d 363 (1996). The relevant case law states only that the award be “reasonable.” See In re Attorney Fees & Costs, supra at 705.
The sanctions awarded in this case were reasonable. Contrary to appellants’ argument, the trial judge *105 who awarded sanctions was intimately familiar with the case, although he did not preside at trial. It was clear from the trial court’s statements that it had read numerous depositions and transcripts and had familiarized itself with the entire lower court file. The trial court listened to extensive argument and was aware of the professional standing of the attorneys arguing the case. The trial court limited costs and fees to the time frame during which defendant repeatedly asserted the frivolous defense to the JDA, the interpretation of which was subject to dispute. The time frame spanned from Juliar’s receipt of the signed letter to the time the trial court ultimately interpreted the JDA. The trial court noted that the main focus of the case during that period was the interpretation of the parties’ agreement. The letter was relevant and important to arguments made during that period.
The trial court ultimately awarded $48,144 in sanctions. In the bill of costs and fees, the costs are broken down for every date that activity occurred on the file between December 1, 1987, the approximate time that Juliar learned of the existence of the letter of intent, and the time of judgment, with each attorney who worked on the file having a separate accounting. The records show that significant time was expended on the case between December 1, 1987, and March 7, 1989, the date the trial court ruled with regard to the JDA. There were numerous strategy sessions regarding the case, the main issue of which was undisputedly the interpretation of the agreement between the parties. The issue of “contemporaneous agreements,” i.e., the letter and the JDA, was researched. The hearing on the motion for summary disposition was held on September 1, 1988. The trial court was led to believe at *106 that time that there were issues of fact with regard to the agreement of the parties. Summary disposition was denied, and plaintiffs continued to prepare for trial, researching issues of unjust enrichment and other strategies that would allow them to collect the money that they felt was owed to them under the agreement, which was clarified by the signed letter of intent. The pretrial statement was discussed and prepared during this time frame, and the letter continued to be an issue. An affidavit was submitted showing that the bill of costs accurately reflected the legal services rendered and amounts charged to plaintiffs for the relevant dates. The actual costs awarded, $48,177, constituted less than twenty-five percent of the total costs and fees billed to plaintiffs after December 1987. Under the circumstances, we find that the trial court did not abuse its discretion in awarding $48,177 in costs and fees as sanctions for the frivolous defense. The trial court’s award was reasonable.
Next, appellants argue that the court erred in refusing to grant their request for an evidentiary hearing to determine if the attorney fees and costs sought by plaintiffs were reasonable. Appellants cite no authority for their argument, and we therefore deem it abandoned for purposes of appeal. Magee, supra at 161. Even if we were to review this issue, we would find no error requiring reversal. See generally Giannetti Bros Constr Co v Pontiac, 175 Mich App 442, 449-450; 438 NW2d 313 (1989).
Next, appellants argue that the trial court denied Bowen his constitutional rights to due process of law by finding, in ruling on plaintiffs’ motion for sanctions, that he had committed unethical and even criminal conduct. Once again, plaintiffs have abandoned *107 this issue by failing to cite any relevant authority. Magee, supra at 161. Nevertheless, we discern no error. Bowen was not charged with, found guilty of, or punished for any crime, nor was the award of sanctions directed against him. Accordingly, he had no right to a hearing.
Finally, appellants argue that the trial court erred in allowing the motion for sanctions to proceed because it was untimely filed. The trial court has discretion to determine if a motion for sanctions is timely. Maryland Casualty Co v Allen, 221 Mich App 26, 31; 561 NW2d 103 (1997). We find no abuse of discretion here.
A motion for costs under MCL 600.2591 must be filed within a reasonable time after the prevailing party is determined. Maryland Casualty, supra at 31, citing Avery v Demetropoulos, 209 Mich App 500, 502-503; 531 NW2d 720 (1995). “The trial court must ascertain, based upon the circumstances of the case, whether the motion for sanctions was filed within a reasonable time.” Maryland, supra at 31.
In Maryland, id. at 31-32, this Court found that a motion for sanctions brought five months after the grant of summary disposition was brought within a reasonable time. In Avery, supra at 501-502, the prevailing party waited until this Court decided the appeal in the underlying matter before bringing a motion under MCL 600.2591(3). The trial court then found that the plaintiff’s claim had been frivolous, and it awarded costs and attorney fees to the defendant. Avery, supra at 501. The plaintiff appealed. This Court, id. at 503, ruled: “The appropriate standard to apply to the statute is whether the motion for costs was filed within a reasonable time after the prevailing *108 party was determined. See Gianetti Bros Construction Co, Inc v Pontiac, 152 Mich App 648; 394 NW2d 59 (1986).” In Gianetti Bros, id. at 655-657, this Court found that a postjudgment motion for mediation sanctions, brought nineteen months after judgment and fifty-five days after this Court decided the appeal, was filed within a reasonable time. This Court noted that it had jurisdiction over the case once the appellate process began. Id. at 656.
In this case, judgment was entered in the underlying litigation in January 1991. A claim of appeal was made on March 29, 1991. This Court released its opinion on September 8, 1994. An application for leave to appeal to the Supreme Court was made on September 29, 1994. The Supreme Court denied leave on January 24, 1995, and denied reconsideration on April 28, 1995. Three and one-half years later, plaintiffs brought their motion for sanctions, after they found out that a signed copy of the letter of intent existed and had not been produced during discovery.[4]
Accordingly, the motion for sanctions essentially was brought 3V2 years after the prevailing party was determined. Whether this was reasonable depends on the circumstances. The circumstances clearly indicate that plaintiffs did not leam about the signed letter of intent until sometime in the summer of 1998. The sanctions motion was filed on November 3, 1998. The trial court believed that the motion for sanctions had been filed within a reasonable time under the circum *109 stances. We discern no abuse of discretion with respect to that ruling.[5]
On cross appeal, plaintiffs argue that the trial court’s initial assessment of sanctions from December 1987 through entry of judgment on January 8, 1991, was permissible and should be reinstated, because there need not be a causal connection between the sanctions awarded and the conduct for which the sanctions were imposed. We disagree that an error occurred. As noted earlier, plaintiffs were only entitled to a reasonable award for attorney fees and costs. Here, the trial court limited the sanction award to the period within which the frivolous defense was an issue in the case. This was reasonable.
Affirmed.

 MCR 2.625(A)(2) states that “if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591 ____”

 Appellants also argue that plaintiffs’ counsel could have obtained the signed letter at the relevant deposition if they had made the proper inquiry. This argument is meritless. At the deposition, Juliar specifically indicated that he would not give opposing counsel the documents over which privilege was being claimed.

 Contrary to appellants’ suggestion, this Court in DeWald v Isola (After Remand), 188 Mich App 697; 470 NW2d 505 (1991), did not rule that a party seeking sanctions must prove that the costs and fees it requests are directly related to the frivolous defense asserted. Rather, the Court addressed whether appellate costs are awardable under MCL 600.2591, MCR 2.114, or MCR 2.625.

 Contrary to appellants’ argument, it was not Clevidence’s refreshed memory that led to the motion for sanctions. The motion was prompted by the discovery that an important document was withheld during litigation.

 Contrary to appellants’ argument, this is not a case where the public policy of finality of judgments is an issue. Plaintiffs did not contest the finality of the judgment, and the award of sanctions did not affect the judgment in any manner. Further, appellants’ analogy to MCR 2.612 is flawed. MCR 2.612, by its own terms, does not absolutely foreclose a trial court from setting aside a judgment after one year.