# STATE OF MICHIGAN

# COURT OF APPEALS

---

WILLIAM M. BOSTON,

       Plaintiff-Appellant,

v

INDEPENDENCE TOOLING SOLUTIONS,
LLC,

       Defendant-Appellee.

UNPUBLISHED
November 20, 2018

No. 340982
Oakland Circuit Court
LC No. 2016-155131-CZ

---

Before: M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Plaintiff, William M. Boston, appeals as of right the trial court's order granting summary disposition in favor of defendant, Independence Tooling Solutions, LLC (ITS), in this declaratory judgment action. For the reasons stated in this opinion, we affirm in part and reverse in part.

## I. BASIC FACTS

Boston worked in the tooling manufacturing industry for 30 years. After being employed by his father for many years, in April 2009 Boston formed his own tooling manufacturing company called Independence Tooling, LLC. Boston had direct authority over all employees and his responsibilities included "general management, hiring and discharge, overseeing manufacturing operations, finance, and he was the director of project management." In August 2015, Boston sold the assets of Independence Tooling to ITS.

In connection with the asset purchase agreement Boston "was required to sign a myriad of documents, which included restrictive covenants." The agreement "restricted him from competing with, or soliciting employees or customers from ITS for a period of five (5) years after the closing date, or one (1) year from the date of his termination from ITS, whichever occurred later." Boston believed the "non-solicitation/non-competition agreement he signed would restrict him from leaving [ITS] to start up a competing tooling manufacturing business, and to keep him from taking his former employees with him to his new business, if any." Boston asserted that he did not intend to retire from the tooling manufacturing industry and ITS was aware of his intentions.

-1-

Additionally, as part of the asset sale, ITS agreed to hire Boston, and on August 3, 2015, Boston became ITS's business development, operations and program manager. Boston signed an employment agreement with ITS that stated he was an at-will employee. The employment agreement included a non-solicitation/non-competition agreement similar to the one in the asset purchase agreement. According to Boston, between January 2016 and June 2016, ITS hired additional staff and began removing operations duties from him. Boston did not believe he "was welcome at ITS, and would likely face termination if he did not resign." On June 30, 2016, Boston and ITS executed a separation agreement, which included an express release and discharge of claims. Boston asserted in his complaint that in the separation agreement, ITS required Boston to "remain bound by the non-solicitation/non-competition agreements" in the asset purchase agreement and the employment agreement.

On August 1, 2016, without regard to the non-competition agreements he signed, Boston began working for Sharp Tooling Solutions (Sharp). Boston stated that Sharp was a significantly larger tooling manufacturer than ITS and that he had called on Sharp in a sales capacity both as the owner of Independence Tooling LLC, and as an employee of ITS. Within days, ITS sent both Boston and Sharp cease and desist notices citing the non-compete and non-solicitation clauses in the agreements Boston had signed. Boston stated that, in an effort to avoid causing problems for Sharp, he left his position at Sharp.

Shortly thereafter, Boston filed his complaint for declaratory judgment stating that the non-competition and non-solicitation agreements were unenforceable and invalid in the current situation because there was no competition between ITS and Sharp relative to the work to be performed by Boston.

Following discovery, ITS filed a motion for summary disposition under MCR 2.116(C)(7), arguing that Boston had expressly released his right to pursue claims against it in the separation agreement. The trial court agreed and granted ITS's motion on that basis. Boston moved for reconsideration, but his motion was denied. Thereafter, ITS filed a motion seeking attorney fees and costs on the basis that Boston's claim was frivolous. The trial court agreed that Boston's claim was frivolous but declined to award attorney fees and costs to ITS because ITS had already been awarded attorney fees and costs following case evaluation of ITS's counterclaim against Boston.

This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Boston first argues that the trial court erred by granting summary disposition under MCR 2.116(7). This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Cichewicz v Salesin*, 306 Mich App 14, 21; 854 NW2d 901 (2014). In a summary disposition motion brought under MCR 2.116(C)(7), the court must consider the affidavits, pleadings, depositions, admissions, and any other documentary evidence submitted by the parties to determine whether a genuine issue of material fact exists. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). Additionally, the proper interpretation of a contract is

a question of law that this Court reviews de novo, *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008), as are questions regarding the interpretation of a release to determine whether it bars a plaintiff's claims, *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013).

## B. ANALYSIS

In granting summary disposition, the trial court relied on common principles of contract interpretation. A release is treated as a contract, so it is subject to the rules of contract interpretation. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Id*. at 660. Consequently, "[t]he scope of a release is governed by the intent of the parties as it is expressed in the release." *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000). "If the language is unambiguous, it must be construed, as a whole, according to its plain and ordinary meaning." *Radu*, 302 Mich App at 374. A contract is ambiguous if "its provisions are capable of conflicting interpretations." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). A contract is not ambiguous if, "although inartfully worded or clumsily arranged," it "fairly admits of but one interpretation." *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008) (quotation marks and citation omitted).

When he resigned from his employment at ITS, Boston signed a separation agreement with ITS, which provides in relevant part:

2. *EMPLOYEE*, for EMPLOYEE and EMPLOYEE'S respective heirs, representatives, attorneys, administrators, executors, guardians, conservators, interested parties, beneficiaries, successors and assigns (collectively the "Successors") *hereby releases and forever discharges COMPANY* and its parent companies (including without limitation, Waltonen Engineering, Inc.), subsidiaries, and affiliates and each of their respective past, present and future employees, agents, Board of Directors, shareholders, representatives, officers, directors, agents, attorneys, affiliates, benefit plans and their trustees, administrators and fiduciaries, and each of them and their respective heirs, administrators, executors, successors and assigns f*rom any and all known or unknown claims, grievances, suits, demands, damages, compensation, benefits, and causes of action, of any kind whatsoever, including, but not limited to:*

\* \* \*

*(p) Any lawsuit over which any state or federal court would have jurisdiction,* including, but not limited to, any claims of mental and/or physical injury; damages to or loss of personal reputation; defamation, intentional infliction of emotional distress; or, violation of constitutional rights.

\* \* \*

4. *EMPLOYEE further promises not to file a lawsuit based upon any right, claim or cause of action released in this Agreement.* EMPLOYEE further agrees not to allow or authorize any person or entity to file such lawsuit on his behalf

against COMPANY. Notwithstanding any of the foregoing, EMPLOYEE may maintain a contract claim to enforce the other provisions of this Agreement.

5. In consideration for EMPLOYEE's agreement to sign and not to revoke this Agreement, COMPANY will pay EMPLOYEE a sum of $24,000.00, less applicable federal, state, and local taxes, and other withholdings, representing twelve (12) weeks of pay ("Severance"). Of this amount, One Thousand and 00/100 ($1,000.00) Dollars shall be attributable to EMPLOYEE's release of claims under the ADEA. EMPLOYEE shall begin receiving Severance only after the seven (7) day revocation period described in Section 9 of this Agreement has concluded ("Revocation Period"). After the Revocation Period has concluded, EMPLOYEE shall receive Severance, payable over the twelve (12) weeks immediately following the Revocation Period (the "Severance Period") in accordance with COMPANY's normal payroll practices. EMPLOYEE's car allowance, cell phone allowance, 401k contribution, health benefits, and any other benefits that EMPLOYEE may have been entitled to during the term of his employment with COMPANY shall cease as of July 1, 2016. EMPLOYEE shall be eligible for COBRA benefits at EMPLOYEE's expense after July 1, 2016.

\* \* \*

10. EMPLOYEE agrees and acknowledges that EMPLOYEE remains bound by all obligations set forth in: (i) the Asset Purchase Agreement by and among Independence Tooling Solutions, LLC (Buyer), Independence Tooling, LLC (Seller) and William Michael Boston (Member) dated August 17, 2015, including but not limited to the Confidentiality (Section 9.7) and Non-Competition and Non-Solicitation (Section 9.8) provisions contained therein; (ii) EMPLOYEE's Employment Agreement dated August 3, 2015, including but not limited to the Covenant-Not-To-Compete and Non-Solicitation (Section 7.2), Confidentiality (Section 7.3), Non-Disparagement (Section 7.5), Return of Property and Information (Section 7.6) provisions contained therein; (iii) any other written agreements of EMPLOYEE. EMPLOYEE agrees and acknowledges that EMPLOYEE has returned all COMPANY records and property and has not retained any COMPANY records or property for himself, either by hard copy, through electronic means, including but not limited to email, or by any other method. EMPLOYEE expressly covenants and represents that he has not retained COMPANY records and property as stated in this Section 10. All the foregoing obligations continue in full force and effect and are not modified by this Agreement. [Emphasis added.]

An examination of the waiver and release language at issue in the separation agreement reveals no ambiguity. The language of the contract is clear and capable of only one interpretation: Boston agreed to release ITS from liability for any cause of action and agreed to waive his right to pursue claims against ITS for any issue relating to the agreements with Boston, including claims based on the non-competition provisions. Accordingly, summary disposition was appropriate under MRC 2.116(C)(7) because Boston expressly released his right to pursue claims against ITS related to the asset purchase agreement and employment agreements.

Nevertheless, on appeal, Boston contends the trial court erred because a party cannot waive his or her right to judicial review of the reasonableness of a non-compete clause. We disagree.

Boston relies on this Court's opinion in *Teachout Sec Servs, Inc*, unpublished per curiam opinion of the Court of Appeals, issue October 19, 2010 (Docket No. 293009).[1] In that case, the plaintiff signed a non-compete agreement that stated in part that the "Employee acknowledges that the covenants and agreements which Employee has made in this Agreement are reasonable and required for the reasonable protection of Teachout and its respective relationships to customers, employees and agents." *Id*. at 5. This Court reasoned that the above language was insufficient to waive the plaintiff's right to judicial review of the reasonableness of the non-compete. *Id*. at 6. This Court explained that because non-compete agreements were disfavored, public policy required judicial scrutiny of the agreement's reasonableness notwithstanding the fact that the parties had contractually agreed that the agreement was reasonable. *Id*. Here, however, the separation agreement provides that in exchange for $24,000, Boston waived his right to bring *any lawsuits* against ITS, including lawsuits with regard to the non-compete agreements. Thus, unlike the plaintiff in *Teachout*, Boston did not merely agree that the non-compete was reasonable, he agreed not to bring a claim based on it. As a result, *Teachout* is distinguishable and we do not find it to be persuasive in this case.

In sum, because no ambiguity exists in the terms of the separation agreement, we conclude that summary disposition was appropriate under MCR 2.116(C)(7).[2]

---

[1] "An unpublished opinion is not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1). However, unpublished opinions can be instructive or persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136 n 3; 783 NW2d 133 (2010).

[2] Boston also argues that the trial court erred by denying his motion for reconsideration. This Court reviews a trial court's ruling on a motion for reconsideration for an abuse of discretion. *St John Macomb-Oakland Hosp v State Farm Mut Auto Ins Co*, 318 Mich App 256, 261; 896 NW2d 85 (2016). The applicable court rule, MCR 2.119(F)(3), allows the trial court considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties. See *Bers v Bers*, 161 Mich App 457, 462; 411 NW2d 732 (1987). Boston sought reconsideration because he wanted the trial court to review the reasonableness of the non-compete clauses of the asset purchase agreement and the employment agreement. In his motion, he repeated the same arguments he had made earlier to the trial court and once again proclaimed that courts retain the common law authority to review non-compete agreements contained within purchase agreements. Yet, Boston continued to ignore the existence of the waiver and release he executed in the separation agreement, which the trial court found to be the linchpin issue in the case. Accordingly, the trial court did not abuse its discretion by denying the motion for reconsideration.

## III.  FRIVOLOUS CLAIM

### A.  STANDARD OF REVIEW

Finally, Boston argues that the trial court erred by finding that his claim was frivolous. We review for clear error the trial court's decision "to impose sanctions on the ground that an action was frivolous within the meaning of MCR 2.625(A)(2) and MCL 600.2591." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013).  "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002).

### B.  ANALYSIS

MCR 2.625(A)(2) provides that, "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591."  A claim or defense is frivolous when: (1) the party's primary purpose was to harass, embarrass or injure the prevailing party; (2) the party had no reasonable basis to believe that the underlying facts were true; or (3) the party's position was devoid of arguable legal merit.  MCL 600.2591(3)(a).  "To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made." *Powell Prod, Inc v Jackhill Oil Co*, 250 Mich App 89, 94; 645 NW2d 697 (2002).  "[A] claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 369; 844 NW2d 143 (2013) (quotation marks and citation omitted).

In this case, although Boston's claim must ultimately fail, he presented a sufficient argument grounded in law and fact to avoid a finding of frivolity.  He is correct in asserting that, as a general rule in Michigan, non-compete agreements are disfavored. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 507; 741 NW2d 539 (2007).  Moreover, he directed the trial court to an unpublished opinion where, despite clear contractual language stating that the plaintiff agreed the non-compete agreement was reasonable, this Court held that the public policy disfavoring non-compete agreements nevertheless required judicial scrutiny of the reasonableness of the agreement.  See *Teachout*, unpub op at 5-6.  Although that case is, as indicated above, distinguishable from the present case, it is sufficient to warrant a finding of *arguable* legal merit. Accordingly, we conclude that the trial court clearly erred by finding Boston's claim frivolous.

We affirm the court's grant of summary disposition under MCR 2.116(C)(7), but we reverse the court's finding that Boston's claim was frivolous.  No taxable costs, neither party having prevailed in full.  MCR 7.219(A).

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey